JEFFREY MICHALAK, Plaintiff-Appellant, *v.* THE COUNTY OF LA SALLE *et al.,* Defendants-Appellees.

Third District   No. 3—83—0243

Opinion filed January 31, 1984.

Scott Picco, of Leo J. Schwamberger, Ltd., of La Salle, for appellant.

Daniel K. Russell, of Johnson, Martin & Russell, of Princeton, for appellees.

JUSTICE SCOTT delivered the opinion of the court:

The plaintiff, Jeffrey Michalak, brought suit against the county of La Salle for personal injuries he incurred in a one-car collision on the Troy Grove blacktop. On November 4, 1980, the plaintiff was northbound on the blacktop when he leaned over to put the ashes of a cigarette he was smoking into the ashtray. At that time, his car went off the road onto the right-hand shoulder causing him to lose control. After several attempts to regain control of his auto, the plaintiff's car went into a spin and slid into the guardrail on the left-hand side of the road. The end of the guardrail pierced the plaintiff's car and amputated his left leg between the ankle and the knee.

The plaintiff brought suit against the county of La Salle alleging that the county negligently installed and maintained the guardrail in that the end of the guardrail was not blunted or buried. The county filed a motion for summary judgment, and the circuit court of La Salle County awarded judgment for the defendant based on that motion, finding that the defendant county owed no duty to the plaintiff, or in the alternative, that if a duty was owed, the defendant's alleged negligence in constructing and maintaining the guardrail was not the proximate cause of the plaintiff's injury. The plaintiff has appealed the judgment of the circuit court, asserting that neither of the alternative findings are so clearly established by the affidavits and depositions

such that no genuine issue of material fact remains for trial.

We agree that the circuit court incorrectly determined that the county owed no duty to the plaintiff. In fact, the cases which the county itself cites argue forcefully that a duty should be owed under these circumstances. The recent supreme court case of *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 308 N.E.2d 617, stands for the proposition that a duty is owed where the occurrence involved is reasonably foreseeable. We are advised that an occurrence is reasonably foreseeable if a reasonably prudent person could have foreseen as likely the events which did transpire. If those events are "highly extraordinary" or "tragically bizarre" or "unique" then the occurrence is not reasonably foreseeable. (*Cunis v. Brennan* (1974), 56 Ill. 2d 372, 380-81, 308 N.E.2d 617, 619-20 (Goldenhersh, J., dissenting).) A duty may be owed to a motorist who deviates from the ordinary course of travel if such a deviation was reasonably foreseeable. (*Hoffman v. Vernon Township* (1981), 97 Ill. App. 3d 721, 423 N.E.2d 519.) In determining whether a deviation from the ordinary course of travel is reasonably foreseeable, the distance of the obstruction from the highway, from the ordinary course of travel, is relevant. *Hoffman v. Vernon Township* (1981), 97 Ill. App. 3d 721, 725, 423 N.E.2d 519, 522.

We believe the mere existence of the guardrail, the fact that the county erected the guardrail at the location in question, concedes the foreseeability that motorists would deviate from the ordinary course of travel in the direction of the guardrail. If motorists never deviated from the traveled portion of the highway, then the guardrail itself would not be necessary. The guardrail stands as a warning of danger, a guide to the eye in keeping to the roadway, and a barrier of sufficient strength to withstand the ordinary weights and forces to which it is subjected. (39 Am. Jur. 2d *Highways, Streets, & Bridges* sec. 402 (1968).) Therefore, the defendant county cannot argue that it owes no duty to the plaintiff because plaintiff's actions were not reasonably foreseeable as a matter of law, when in fact one reason for erecting such a guardrail is to provide a physical barrier for autos with which it comes in contact. It is a question of fact whether a guardrail along a highway need be suitable merely as a warning, or must suffice physically to prevent vehicles from running off the highway into places of danger. 39 Am. Jur. 2d *Highways, Streets, & Bridges* sec. 403 (1968).

The second finding relied upon by the circuit court in granting the defendant's motion for summary judgment was that the negligence of the county was not the proximate cause of the plaintiff's injury. It appears that the plaintiff was successful in raising an issue of

fact as to the county's negligence in installing the guardrail, the end of which was not buried or blunted in some manner; however, if there was an intervening negligent act which superseded the county's negligence, then the county's action was not the legal cause or the proximate cause of the plaintiff's injury. The defendant cites a series of cases which hold that obstructions in the highway or near the highway are merely conditions and not the legal cause of injury. Those cases conclude that even if the condition was negligently placed, where an intervening negligent act is the superseding cause of injury, no liability attaches to the negligent condition. These cases follow the precedent established in *Briske v. Village of Burnham* (1942), 379 Ill. 193, 39 N.E.2d 976.

The *Briske* court concludes that an actor whose negligence gives rise to a mere condition which causes injury is not liable in tort for that act as the act is not the proximate cause or legal cause of the injury.

> " 'Proximate cause'—in itself an unfortunate term—is merely the limitation which the courts have placed upon the actor's responsibility for the consequences of his conduct. In a philosophical sense, the consequences of an act go forward to eternity, and the causes of an event go back to the discovery of America and beyond. 'The fatal trespass done by Eve was cause of all our woe.' But any attempt to impose responsibility upon such a basis would result in infinite liability for all wrongful acts, and would 'set society on edge and fill the courts with endless litigation.' As a practical matter, legal responsibility must be limited to those causes which are so closely connected with the result and of such significance that the law is justified in imposing liability. Some boundary must be set to liability for the consequences of any act, upon the basis of some social idea of justice or policy." (Prosser, Torts sec. 41, at 236-37 (4th ed. 1971).)

> "The term 'proximate cause' is applied by the courts to those more or less undefined considerations which limit liability even where the fact of causation is clearly established. The word 'proximate' is a legacy of Lord Chancellor Bacon, who in his time committed other sins. The word means nothing more than near or immediate; and when it was first taken up by the courts it had connotations of proximity in time and space which have long since disappeared. It is an unfortunate word, which places an entirely wrong emphasis upon the factor of physical or mechanical closeness. For this reason 'legal cause' or perhaps even 'responsible cause' would be a more appropriate

term." (Prosser, Torts sec. 42, at 244 (4th ed. 1971).)

Under the common law doctrine of contributory negligence, application of this policy rendered nonactionable the remote act of an actor who created a condition of injury, thus preventing the injustice that would result if the actor were liable for the full measure of damages even for acts remotely connected with the injury. Conversely, the harsh effects of denying any recovery to an injured plaintiff were ameliorated when this policy was applied such that the superseding negligence of the defendant nullified the negligence of the plaintiff. *Alvis v. Ribar* (1981), 85 Ill. 2d 1, 421 N.E.2d 886; Prosser, *Comparative Negligence,* 51 Mich. L. Rev. 465, 496 (1953); V. Schwartz, Comparative Negligence sec. 4.5 (1974).

With the adoption of the doctrine of comparative negligence in Illinois, the need is diminished for a policy which protects the remotely negligent defendant from liability for the full measure of damages or for a policy that ameliorates the harsh effects of contributory negligence on the plaintiff. Nevertheless, authorities agree that proximate cause remains an element of the cause of action under the rules of comparative negligence. (V. Schwartz, Comparative Negligence sec. 4.2 (1974); H. Woods, Comparative Fault sec. 5:1 (1978); *Minor v. Zidel Trust* (Okla. 1980), 618 P.2d 392.) As a practical matter, however, the comparison which occurs under the doctrine of comparative negligence limits liability to some extent in the same fashion as the policy considerations underlying the proximate cause test.

> "The comparison should take account of the degree to which the acts or omissions cause the injury and the culpability involved. It will include the proximate cause components of non-remoteness and foreseeability—if they are present—as aggravating either degree of cause or culpability respectively." (Note, *Legal Cause, Proximate Cause, & Comparative Negligence in the F.E.L.A.,* 18 Stan. L. Rev. 929, 935 (1966).)

Thus, where fault can be apportioned, the need to limit the consequences of any act using the proximate cause rationale is diminished. H. Woods, Comparative Fault sec. 5:1 (1978); V. Schwartz, Comparative Negligence sec. 4.3 (1974).

Cognizant of the changes wrought by the adoption of the doctrine of comparative negligence, courts have been less willing to label an actor's conduct as a remote cause or condition of injury.

> "Cases in which, prior to the adoption of comparative negligence, plaintiff might have lost under proximate cause rules, because the act of plaintiff or third parties was regarded as a 'supervening cause,' might be reconsidered because the court

can now reach a fair decision by apportioning some of the blame to the defendant and some to third parties or to the plaintiff himself." (V. Schwartz, Comparative Negligence sec. 4.3 (1974).) Consistent with these authorities we decline to hold that the defendant county's action in installing and maintaining the guardrail was a remote cause, or condition, of the plaintiff's injury. If under the rules of comparative negligence the county is only remotely at fault, then the degree of fault assessed by the jury would presumably reflect this lack of culpability. The county's conduct is not so remote from the events leading to plaintiff's injury that it can be said as a matter of law that such conduct was not a contributing legal cause. Accordingly, the judgment of the circuit court of La Salle County is reversed and this cause remanded to the circuit court of that county for a trial on the merits.

Reversed and remanded.

STOUDER, P.J., and HEIPLE, J., concur.