JAMES GREEN, Plaintiff-Appellee, v. UNION PACIFIC RAILROAD COMPANY, Defendant-Appellant.

Fifth District   No. 5—94—0112

Opinion filed March 21, 1995.

1076

James W. Erwin, Kurt E. Reitz, and Mary Sue Juen, all of Thompson & Mitchell, of Belleville, and Patricia M. Caragher, of Union Pacific Railroad Company, of St. Louis, Missouri, for appellant.

John P. Kujawski and Christine E. Anderson, both of Kujawski & Faerber, P.C., of Belleville, for appellee.

PRESIDING JUSTICE MAAG delivered the opinion of the court:

Plaintiff, James Green, filed a one-count complaint under the Federal Employers' Liability Act (45 U.S.C. § 51 *et seq.* (1988)) (FELA) against his employer, Union Pacific Railroad Company (U.P.). He alleged that on November 25, 1991, he was injured when the tread of his boot caught in a metal grating, causing him to injure his knee. Various charges of negligence on the part of his employer were alleged. The U.P. denied that it was negligent and alleged that Green was contributorily negligent, thereby contributing to or causing his own injury. The jury returned a general verdict in favor of Green. U.P. filed a post-trial motion, which was denied. It now appeals.

U.P. first claims that the circuit court erred when it granted a motion *in limine* filed by Green prohibiting it from referencing, commenting on, or eliciting testimony on the Americans with Disabilities Act (42 U.S.C. § 12101 *et seq.* (Supp. 1990)) (ADA). According to U.P., the ADA was a proper subject for testimony and was relevant on the issue of Green's alleged loss of future earning capacity.

We begin the inquiry by determining what was excluded *in limine*. On the first day of trial, Green made a motion to exclude reference to the ADA. The court granted the motion and ordered that no reference should be made to the ADA. It went on to state in its order that U.P. could present evidence on "the things you can do for him [Green], but leave the Federal Act out." Counsel were then told that when the point was reached where U.P. wanted to "inject" the ADA into the case, the court would hear argument on the issue.

The following day, Green's counsel raised the ADA issue again. He amended his motion to exclude not only specific mention of the ADA but also use of the phrase "reasonable accommodations." It was Green's position that the phrase amounted to "code words" for the ADA. U.P.'s counsel objected and stated: "Saying 'reasonable accommodations', judge, that doesn't point to anything. That doesn't point to the ADA."

The court allowed the motion but again reiterated that the U.P. could present factual evidence about what it could do for Green, such as modifying his workplace or job to "fit his physical problems." U.P.'s counsel sought clarification, asking: " '[R]easonable accommodations' *those two words* cannot come out of the mouths of any of the *** [defense witnesses][?]" (Emphasis added.) The court stated, "That's my ruling."

The next event occurred while Green's counsel was cross-examining a U.P. witness. In an effort to impeach the witness with his deposition testimony, a number of prior questions and answers were read from a deposition. One deposition question included the phrase "absolute accommodation" and another included the word "accommodation." U.P. counsel did not object, but at the conclusion of the cross-examination she argued that the door had been opened. Then, in contradiction of her earlier argument at the hearing on the motion *in limine,* she claimed that as to "accommodations," "That's a buzz word for the ADA." The court refused to allow evidence of the ADA at that point.

U.P. argues that a court should not exclude, *in limine,* evidence that is relevant and admissible (citing *Bradley v. Caterpillar Tractor Co.* (1979), 75 Ill. App. 3d 890, 394 N.E.2d 825). Additionally, it argues that each party is entitled to present evidence relevant to its theory of the case (citing *Marut v. Costello* (1966), 34 Ill. 2d 125, 214 N.E.2d 768). We agree with both propositions. We disagree, however, with the claim that the ADA was relevant and admissible in this FELA case.

■ As a threshold matter, we believe that the ADA itself precludes its use by the U.P. in this case to limit the damages awarded under the FELA due to loss of future earning capacity. It is beyond dispute that loss of future earning capacity is a proper element of damage under the FELA. (*Bissett v. Burlington Northern R.R. Co.* (8th Cir. 1992), 969 F.2d 727, 731; *Lewis v. Cotton Belt Route—St. Louis Southwestern Ry. Co.* (1991), 217 Ill. App. 3d 94, 116-17, 576 N.E.2d 918, 936.) The ADA specifically provides, "Nothing in this [Act] shall be construed to invalidate or limit the remedies, rights, and procedures of any Federal law or law of any State or

political subdivision of any State or jurisdiction that provides greater or equal protection for the rights of individuals with disabilities than are afforded by this [Act]." 42 U.S.C. § 12201(b) (Supp. 1990).

The avowed purpose for the proposed introduction of evidence concerning the ADA was to diminish Green's claim for damages. Thus, his FELA remedy would be limited in violation of the foregoing provision. This would be true whether Green was claiming a present inability to work or a future inability to work.

The ADA was not intended to diminish other remedies to the injured and disabled. Section 12201(b) of the Act is a concise statement of this fact.

Even in the absence of the foregoing section of the ADA, the evidence would have been inadmissible. The U.P. cites decisions from various jurisdictions that have held evidence of other regulations or standards to be admissible in an FELA case (see, *e.g., Albrecht v. Baltimore & Ohio Ry. Co.* (4th Cir. 1987), 808 F.2d 329 (OSHA regulations admissible on the issue of negligence); *Beissel v. Pittsburgh & Lake Erie Ry. Co.* (3d Cir. 1986), 801 F.2d 143 (Federal railway regulations admissible in FELA action); *Marshall v. Burlington Northern, Inc.* (9th Cir. 1983), 720 F.2d 1149 (Railway Safety Act regulations admissible in FELA case)). From these decisions it posits that evidence of the ADA should also be admitted. We disagree.

■ Evidence of these other statutes and regulations was admitted to assist the trier of fact in its evaluation of the *past* conduct which was at issue in the case. This past conduct was fixed and certain. The conduct of the plaintiff and defendant may have been disputed, but it is the function of a jury to resolve disputed issues of fact. In the case at bar, the purpose for the proposed introduction of evidence concerning the ADA was, according to U.P.'s brief, to "refute[ ] plaintiff's claim of possible future unemployment." Clearly what the U.P. was seeking was the opportunity to hypothesize a set of future events that potentially could lead to a claim by Green at some point in the future that he was unable to continue working. Then under this hypothetical set of facts, the U.P. desired to have a witness testify about his understanding of what the ADA would require of it as Green's employer.

If this was allowed, two lawsuits would be taking place at the same time in any FELA or personal injury suit containing a claim of future wage loss or loss of earning capacity. Both an ADA and FELA claim would be simultaneously tried. The court would have to assume the role of fortune teller, because no one knows whether the ADA will be in existence next month, next year, or forever. Will it be amended? Will it be repealed? Who knows? Not this court, not the trial court, and certainly not the plaintiff or defendant.

Compare this situation to the other instances cited by U.P. where regulations and standards have been admitted into evidence, and the difference is readily apparent. Those standards and regulations all were in effect at the time of the event giving rise to the lawsuit. The rules were fixed and the facts were fixed. Both law and facts were known and established.

The U.P. complains that there is no difference between a plaintiff presenting evidence of future inability to work and consequent wage loss and the evidence it sought to introduce on the ADA. We disagree. A physician can properly testify to a reasonable degree of medical certainty that a physical condition will worsen, and that a patient will be unable to engage in certain physical activity. (*Pry v. Alton & Southern Ry. Co.* (1992), 233 Ill. App. 3d 197, 215-16, 598 N.E.2d 484, 497-98.) No one can testify what the law will be in the future.

Our supreme court has clearly stated:

> "It is well understood that the legislature has no authority to pass a law impairing the obligation of a contract or depriving a citizen of his property or of any vested right, but there is no vested right in a public law which is not in the nature of a grant, and however beneficial an act of the legislature may be to a particular person or class of persons or however injuriously they may be affected by its repeal, the legislature clearly has the right to abrogate all legislative acts which are not in the nature of contracts or private grants." *Smolen v. Industrial Comm'n* (1926), 324 Ill. 32, 36, 154 N.E. 441, 443.

The same is no less true of the Congress of the United States.

The ADA simply was not relevant in Green's case. His case was premised on the FELA. His cause of action under the FELA had accrued, and the rights and liabilities of the parties were fixed and vested, at the time of his injury. *Smolen,* 324 Ill. at 36, 154 N.E. at 443.

The U.P. did not claim at trial that a cause of action in favor of Green under the ADA had yet accrued. Neither did Green. He was working, and he claimed only that at a disputed future date he would be unable to do so. If in the future he became unable to work, and if the ADA was still in existence, the U.P. would have certain duties and Green would have certain rights. But to admit evidence of a statute that presently exists and then argue that contingencies in the future would be governed by that statute amounts to pure speculation. If this were allowed, and if Green's damages were diminished as a consequence, the judgment that would result would be tantamount to an advisory opinion.

Advisory opinions are proscribed in both State (*County of Cook v. Ayala* (1979), 76 Ill. 2d 219, 390 N.E.2d 877) and Federal courts (*R.T. Vanderbilt Co. v. Occupational Safety & Health Review Comm'n* (11th Cir. 1983), 708 F.2d 570). A decision of a court is advisory when, among other reasons, it is subject to revision by a coordinate branch of government. *Hayburn's Case* (1792), 2 U.S. (2 Dall.) 409, 409-10, 1 L. Ed. 436, 436; *R.T. Vanderbilt Co.*, 708 F.2d at 574.

In this case U.P. sought to introduce evidence that the ADA was in effect at the time of trial and that Green's right to continued employment in the future despite his disability would be governed by that act. This ignores the fact that neither Green's rights nor the U.P.'s rights, in the event of Green's future disability, were vested. No cause of action under the ADA had accrued. If what U.P. was attempting were allowed, Green's already-vested rights under the FELA (the right to damages due to loss of earning capacity) would be subject to diminution and divestiture. But this vested right would be diminished and divested by evidence of a statute that is subject to amendment or repeal. Because no cause of action under the ADA had yet accrued, no rights or duties under the ADA had vested. A judicial act, the judgment, would be subject to revision by another branch of government, the Congress, in the event the ADA was amended or repealed. This is so because even though no ADA claim existed at the time of trial, the rights of the parties in the event of such a claim would have been adjudicated by the jury and the judgment of the court. Given this potential for revision, in the event of amendment or repeal of the ADA, a clear violation of the rule announced in *Hayburn's Case* and *Vanderbilt* would occur.

Would Green then be able to reopen his FELA case and ask for a new trial on damages? We think not.

Stated differently, the ADA evidence (defense) the U.P. sought to present was not admissible because such a claim may never occur. Thus, a determination of the parties' rights under the ADA was not ripe for decision. (*Velazquez v. Soliz* (1986), 141 Ill. App. 3d 1024, 490 N.E.2d 1346.) It is elementary that, for a cause of action to accrue, all elements of that cause of action must be present. *Fetzer v. Wood* (1991), 211 Ill. App. 3d 70, 569 N.E.2d 1237.

We wish to emphasize that the U.P. was not barred from presenting evidence of efforts it had made and could make in the future to alleviate job difficulties that Green experienced due to his injury. For example, John Rodgers, a U.P. supervisor, described jobs in the truck shop that were available and did not require bending and climbing. Moreover, we must emphasize that the court specifically allowed evidence of what the U.P. could do for Green in light of his injury.

■ Finally, we believe the issue has been waived due to failure to make a sufficient offer of proof. (*People v. Andrews* (1992), 146 Ill. 2d 413, 421, 588 N.E.2d 1126, 1131.) U.P. did not make an offer of proof regarding the evidence it sought to introduce on the ADA at the time of either the first hearing or second hearing on the motion *in limine*. Similarly, no offer of proof was made at the time relief from the order was sought as a result of the alleged violation by Green's counsel. It is true that U.P. did make a later offer of proof, after all parties had rested their case. But this was insufficient.

We recognize that in the press to conclude a trial parties occasionally agree that an offer of proof will be deferred until a later time that is more convenient. Occasionally, the trial judge will suggest completing the record at a later time in the trial. In such an instance a party could be excused from completing the record until that later time. That very thing happened in this case. But even then the offer must be adequate.

An offer of proof not only creates a record for review, it also apprises the trial judge of specific evidence being offered so that he can make an informed ruling. *Andrews*, 146 Ill. 2d at 421, 588 N.E.2d at 1131.

The admission of evidence is a matter largely within the discretion of the trial court, and its decision will not be reversed unless there has been an abuse of discretion. (*Needy v. Sparks* (1977), 51 Ill. App. 3d 350, 366 N.E.2d 327.) Where the trial court has sustained an objection to the offered evidence, an adequate offer of proof is made if counsel makes the substance and particulars of the witness' anticipated testimony known to the trial court. (*Andrews*, 146 Ill. 2d at 421, 588 N.E.2d at 1131.) The purpose of an offer of proof is: (1) to disclose to the trial judge and opposing counsel the nature of the offered evidence, and (2) to enable a reviewing court to determine whether the exclusion was proper. *Andrews*, 146 Ill. 2d at 421, 588 N.E.2d at 1131.

A review of the record indicates that at the time of the hearing on the motion *in limine*, U.P. failed to make an adequate offer of proof that would enable the trial judge to make an informed decision as to admissibility. In fact, no offer of proof at all was made. Counsel only alluded in the most general terms to her position that the ADA was relevant and admissible.

Inadequate offers of proof include those instances where a mere summary of the witness' expected testimony is offered in a conclusory manner. Moreover, counsel's unsupported speculation as to what the witness might say is insufficient. It is fundamental that "in making the offer of proof, counsel must explicitly state what the excluded

testimony would reveal and not merely allude to what might be divulged by the testimony. [Citation.] The offer serves no purpose if it does not demonstrate, both to the trial court and to reviewing courts, the admissibility of the testimony which was foreclosed by the sustained objection." *Andrews*, 146 Ill. 2d at 421, 588 N.E.2d at 1131-32.

U.P. objected on three separate occasions to Green's motion *in limine* and the subsequent exclusion of any reference to the ADA. Thus, U.P. had three opportunities to make an offer of proof during trial. Reviewing each opportunity in turn reveals that U.P. never made an adequate offer of proof which would inform the court of the proposed testimony's admissibility.

U.P.'s first opportunity to make an offer of proof came after the court initially sustained Green's motion *in limine*. In response to the court's ruling, counsel for U.P. only stated, "I know, but I think what the people will testify is that they make reasonable accommodations." Assuming this is an offer of proof, it is a speculative statement about the substance of the testimony. U.P. failed to state who the witness was or what the witness' testimony would be, and U.P. failed to lay any foundation for the witness' knowledge of the issue. These are specifics the court must have in order to properly determine the admissibility of the evidence. (*Andrews*, 146 Ill. 2d at 421-22, 588 N.E.2d at 1132.) Therefore, we cannot say the trial court abused its discretion at this point.

U.P.'s second opportunity to make an adequate offer of proof arose when the court allowed Green's amended motion *in limine* to exclude the phrase "reasonable accommodations." Instead of stating what her witness would say about "reasonable accommodations" or how the phrase might otherwise be admissible through an offer of proof, U.P.'s counsel merely sought clarification of the ruling that her witnesses could not use the excluded phrase. The record does not indicate that counsel even attempted an offer of proof. Given that U.P. now complains that the trial court erred in excluding the testimony, we find that any offer of proof U.P. attempted to make was inadequate as it failed to demonstrate the admissibility of the excluded evidence to the trial court. (*Andrews*, 146 Ill. 2d at 421, 588 N.E.2d at 1132.) Thus, we cannot say that the trial court abused its discretion at this point.

U.P.'s third opportunity to make an adequate offer of proof arose while defense witness John Mulick was on the stand. In an attempt to impeach Mr. Mulick, Green's counsel used portions of the witness' deposition in which the terms "accommodations" and "absolute accommodation" were used.

At the conclusion of the cross-examination, U.P.'s counsel stated, "Your honor, I submit to you that the plaintiff's attorney has opened the door as to accommodation and I should be able to get into the ADA at this time." U.P.'s request was correctly denied. U.P. failed to state what evidence she wished to have Mr. Mulick present on the ADA. She stated only that she wanted to "get into the ADA." Furthermore, where the witness is available to testify, an informal offer of proof should not be made by the attorney's recitation of the witness' testimony. (*Mulhern v. Talk of the Town, Inc.* (1985), 138 Ill. App. 3d 829, 834, 486 N.E.2d 383, 387.) U.P. had the opportunity to make a formal offer of proof. It failed to do so. U.P. should not be heard to complain on appeal that the trial court abused its discretion in excluding the ADA when U.P. had and failed to exercise a chance to inform the trial court of the *specific* testimony it sought to introduce. Again, we cannot say the trial court abused its discretion of this point. We do note, however, that U.P. counsel contradicted her earlier position when she claimed that "accommodation" was a buzz word for the ADA.

The one instance where U.P. presented what it called an offer of proof on the issue was also inadequate. After all the evidence was in and both sides had rested, U.P. offered that "John Mulick would have testified that he was familiar with the ADA, that it's a federal law, [and] that it requires Union Pacific Railroad to make reasonable accommodations for their employees with disabilities or with working regulations." U.P.'s offer was still inadequate because it merely summarized the witness' testimony in a conclusory manner when the witness had been available for U.P. to make a formal offer of proof. *Mulhern*, 138 Ill. App. 3d at 834, 486 N.E.2d at 387.

The most basic problem with the U.P.'s attempts to make an offer of proof was its failure to demonstrate the competency of any proposed witness to give testimony on the ADA. The U.P. wanted its witnesses to testify regarding their understanding of what the ADA required. This is fundamentally improper. (*City of Bloomington v. Bloomington Township* (1992), 233 Ill. App. 3d 724, 599 N.E.2d 62.) Even if such evidence was proper, the witness must first be shown to be qualified to testify on the subject. No offer to demonstrate this competency was ever made.

Accordingly, we find no error in excluding the testimony regarding the ADA.

■ For the same reasons, we find no error on the part of the trial court in refusing relief from the *in limine* order when Green's counsel read impeaching deposition testimony containing the words "accommodation" and "absolute accommodation." Those references did not

violate the prohibition against use of the words "reasonable accommodations," which U.P. counsel carefully clarified as being all that was excluded—"Those two words."

■ U.P. next argues that the court erred in submitting the issue of loss of future earning capacity to the jury, claiming that because Green was working at the time of trial the claim should not have been submitted. U.P. also argues that the evidence otherwise failed to justify submission of the claim. We disagree.

"Testimony by plaintiff that his injuries diminished his capacity to work, the appearance of plaintiff on the witness stand, and testimony as to the nature of his injuries and their duration are sufficient to take the question of impaired earning capacity to the jury. [Citation.] Furthermore, a physician may testify as to whether an injury is permanent, and once plaintiff introduces evidence of permanent injury, the jury should be instructed as to loss of future earnings." *Lewis v. Cotton Belt Route—St. Louis Southwestern Ry. Co.* (1991), 217 Ill. App. 3d 94, 116-17, 576 N.E.2d 918, 936.

We have reviewed the record and believe sufficient evidence was presented to submit the issue to the jury. *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.

U.P. also argues that the jury should not have been instructed on the loss of future earning capacity as an element of damages. We disagree. Loss of future earning capacity is a recognized element of damages and a proper subject for jury instruction. (*Bissett*, 969 F.2d 727; *Lewis*, 217 Ill. App. 3d 94, 576 N.E.2d 918.) We find no error in instructing on this element of damages.

Next, U.P. argues that it was error to give plaintiff's instruction (Illinois Pattern Jury Instructions, Civil, No. 160.09 (3d ed. 1991)) (IPI Civil 3d) regarding assumption of the risk in the absence of a claim by the U.P. that Green had assumed the risk and in the absence of evidence to that effect. The instruction at issue is proper when the question of assumption of risk is either expressly or implicitly before the jury. (*Clark v. Burlington Northern, Inc.* (8th Cir. 1984), 726 F.2d 448.) The issue is presented when there "is any evidence *** from which it could be inferred that the employee had assumed the risk." *Harp v. Illinois Central Gulf R.R. Co.* (1977), 55 Ill. App. 3d 822, 826, 370 N.E.2d 826, 829.

■ In the case at bar, the jury heard evidence that there was no alternative way for Green to do his job, that in climbing on the scaffold he was complying with his supervisor's instructions, and that in descending the ladder at the time of his accident he had no choice but to place his foot in the manner he did. This evidence could have led the jury to believe that Green had assumed the risk.

The decision whether to instruct on an issue is committed to the sound discretion of the trial court, and the decision will be reversed only upon a showing of abuse of discretion. (*Eaves v. Hyster Co.* (1993), 244 Ill. App. 3d 260, 614 N.E.2d 214.) We find no abuse of discretion.

■ The U.P. also complains that the trial court erred in refusing to give IPI Civil 3d No. 5.01 due to Green's failure to produce at trial the boots he was wearing at the time of the accident. Prior to trial the boots had been made available for the U.P. to inspect. It photographed the boots. The boots were originally selected from a catalog provided by the U.P. to its employees. There was no claim that there was anything unique about the particular boots Green was wearing at the time of the accident, as distinguished from a like pair of boots that could be readily purchased. In fact, the U.P. did not dispute that the sole of the boots became lodged in the grating at the time of the accident. Rather, it alleged that fact as part of its defense of contributory negligence. We find no abuse of discretion in the refusal to give the instruction. The evidence (the boots) had been previously made available to U.P., and a like pair remained readily available. Thus, there is no indication that the evidence was not equally available to both parties. *Hicks v. Hendricks* (1975), 33 Ill. App. 3d 486, 342 N.E.2d 144.

The U.P. claims that the trial court erred in excluding *in limine* the railroad's proffered evidence that there existed no prior accidents involving shoes caught in the grate in question.

■ A party seeking to introduce evidence of a lack of prior accidents bears the burden of laying a proper foundation. The proponent must show (1) the absence of prior accidents while using the same product (in this case logger boots of the type Green was wearing on the grating that the accident occurred upon), and (2) the use must take place under conditions substantially similar to those present when the injury occurred. (*Connelly v. General Motors Corp.* (1989), 184 Ill. App. 3d 378, 392, 540 N.E.2d 370, 379.) A trial court's decision to admit or refuse the evidence is a matter of discretion, subject to reversal only for abuse of that discretion. *Connelly*, 184 Ill. App. 3d at 392, 540 N.E.2d at 379.

•9 We have reviewed the record, and it appears that only one person, Gene Hamby, was mentioned by U.P. counsel as a proposed witness on this subject prior to the close of evidence. The totality of what was offered by the U.P. on this issue prior to resting its case was the following: "Gene Hamby was working with him [Green] that day with the same boots on the same scaffolding." This does not meet the minimum requirements for the introduction of this type of evidence. We find no abuse of discretion in granting the motion *in lim-*

*ine.* After resting its case, the U.P. attempted to be more specific in an offer of proof. We have reviewed the offer of proof made after the parties had rested and find no abuse of discretion on the part of the trial court in refusing the proffered evidence, because the evidence did not sufficiently satisfy the two-prong test for admission.

■ U.P. argues that the court erred in denying its motion *in limine* to preclude Green's counsel from stating to the jury that the FELA was Green's sole remedy. U.P. did not object at the time the statement was made. To preserve a claim of error in denying a motion *in limine*, counsel must also make a contemporaneous objection at the time the offending evidence is offered or statement is made. (*Moore v. Bellamy* (1989), 183 Ill. App. 3d 110, 538 N.E.2d 1214.) By its failure to object, U.P. waived the issue.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed.

Affirmed.

CHAPMAN and LEWIS, JJ., concur.