JOHN KNIGHT *et al.*, Plaintiffs-Appellees, v. THE CITY OF CHICAGO, Defendant-Appellant.

First District (3rd Division)    No. 1—96—0329

Opinion filed June 17, 1998.—Rehearing denied September 11, 1998.

COUSINS, J., dissenting.

Susan S. Sher, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Timothy W. Joranko, Assistant Corporation Counsel, of counsel), for appellant.

Paul T. Julian, of Julian & Associates, and David A. Novoselsky and Linda A. Bryceland, both of David A. Novoselsky & Associates, both of Chicago, for appellee John Knight.

Ciardelli & Cummings, of Chicago (Victor F. Ciardelli, Patrick M. Cum-

mings, Steven J. Rizzi, and Dom J. Rizzi, of counsel), for appellee Alicia Washington.

JUSTICE CAHILL delivered the opinion of the court:

The facts are these: a Chicago fire truck, on the way to a fire, drove onto a raised median strip. The median was under repair and contained empty planter boxes and tree pits. The driver lost control when the wheels of the truck entered the planter boxes and a tree pit. The truck then entered the opposite lane of traffic and hit a car occupied by two young women. The driver of the car, Dovie Knight, was killed and the passenger, Alicia Washington, was injured. Dovie Knight's father and Alicia Washington each sued the City of Chicago (the City). The actions were consolidated. After trial, the jury returned a verdict in favor of John Knight for $1,500,000 and in favor of Alicia Washington for $200,000. The City appeals. We reverse.

At approximately midnight on September 11, 1989, a Chicago firefighter, Patrick Lynch, was driving a Chicago fire department snorkel truck southbound on Halsted Street. The truck, responding to a call, was traveling approximately 35 miles per hour with siren and warning lights activated. At the same time, Dovie Knight was driving her car north on Halsted.

The fire truck went southbound through the intersection of 111th and Halsted, where the light was green, still traveling 35 miles per hour. The parking lane of southbound Halsted was filled with parked cars. Two cars were double-parked in the right-hand southbound travel lane, so only the left-hand southbound lane was clear for traffic.

As the fire truck approached the double-parked cars, the truck swerved to the left, and the wheels on the left side of the truck mounted the median curb. Witnesses disputed whether the driver of the fire truck had been forced to take evasive action because a car had come out of the adjacent alley and blocked the left and only open lane of traffic.

Once on the median, the wheels of the fire truck rolled in and out of the planter boxes and into the tree pit. The truck was then propelled off the median into the oncoming northbound lanes where Dovie Knight's car was facing northbound. The truck struck the driver's side door of Dovie Knight's car.

The jury found the City negligent and awarded damages to the plaintiffs. The City filed a posttrial motion for judgment notwithstanding the verdict or, in the alternative, a new trial. The court denied the motion, finding that it was foreseeable that a fire truck, an emergency vehicle, would drive on a raised median, and that the City has a duty of reasonable care when it installs and maintains planter boxes on medians.

■■ If defendant owes no duty to the plaintiffs, and the evidence establishes that there is no duty, the verdict cannot stand. *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510, 229 N.E.2d 504 (1967). We review the denial of a judgment *n.o.v.* under the *Pedrick* standard: whether all the evidence, when viewed most favorably to the opponent, so overwhelmingly favors the movant that no contrary verdict could ever stand. *Pedrick*, 37 Ill. 2d at 510. A judgment notwithstanding the verdict presents a question of law and will be granted only if there is a total failure to prove an essential element of the plaintiff's case. *Baier v. Bostitch*, 243 Ill. App. 3d 195, 202, 611 N.E.2d 1103 (1993). The threshold issue in this case is whether the City owes a duty to maintain a raised median in such a way as to make it safe for use by emergency vehicles.

■ We initially note that plaintiffs, throughout their brief, argue that the City not only had a duty to make the median safe, but also to warn of a raised median under repair. As the City's brief points out, the alleged failure to warn was addressed through a motion *in limine*. The issue was excluded from trial with no objection from the plaintiffs. The jury instruction tendered by the plaintiffs and given to the jury did not raise the issue. The issue is waived. *Green v. Union Pacific R.R. Co.*, 269 Ill. App. 3d 1075, 1087, 647 N.E.2d 1092 (1995). We note, however, that the City owes no duty to warn of obvious dangers and that drivers are presumed to know that leaving the road is dangerous. *Bucheleres v. Chicago Park District*, 171 Ill. 2d 435, 665 N.E.2d 826 (1996). The City also has absolute immunity from liability based on alleged failures to erect traffic warnings or barricades. See 745 ILCS 10/3—104 (West 1994).

■■ A negligence claim must allege the existence of a duty, breach of that duty, and an injury proximately caused by the breach. *Ross v. City of Chicago*, 168 Ill. App. 3d 83, 86, 522 N.E.2d 215 (1988). The City is subject to the Local Governmental and Governmental Employees Tort Immunity Act (the Act) (745 ILCS 10/3—102 (West 1994)). Section 3—102(a) of the Act imposes a duty to exercise ordinary care to maintain property in a reasonably safe condition. The City may be liable if, after it constructs or improves public property, it appears from its use that the City has created a condition that is not reasonably safe. 745 ILCS 10/3—102(a) (West 1994). The Act codifies the common law duties of municipalities to maintain public ways. *Ross*, 168 Ill. App. 3d at 87. At common law, liability arises when the undertaken improvement creates an unreasonably dangerous condition. *Ross*, 168 Ill. App. 3d at 87.

The City argues that the scope of its duty to maintain property in a reasonably safe condition cannot be read to include maintenance of

raised medians in such a way that they are safe for vehicles, including emergency vehicles, when they leave the roadway.

Plaintiffs note, however, that our supreme court has held that, "when a city creates a hazardous condition and someone is injured as a consequence it must respond in damages." *Baran v. City of Chicago Heights*, 43 Ill. 2d 177, 181, 251 N.E.2d 227 (1969). Plaintiffs argue that the planter boxes and tree pits created a hazardous condition. In support they rely on *Michalak v. County of La Salle*, 121 Ill. App. 3d 574, 459 N.E.2d 1131 (1984), and *Kubala v. Dudlow*, 17 Ill. App. 2d 463, 150 N.E.2d 643 (1958).

■ In *Michalak*, the plaintiff left the road, entered the shoulder and slid into a guardrail. The guardrail pierced the car and injured the plaintiff. The court, relying on the Illinois Supreme Court opinion in *Cunis v. Brennan*, 56 Ill. 2d 372, 308 N.E.2d 617 (1974), held that a duty is owed if an occurrence is reasonably foreseeable. An occurrence is "reasonably foreseeable" if a reasonably prudent person could have foreseen as likely the events that transpired. If the events are " 'highly extraordinary,' " " 'bizarre' " or " 'unique,' " the occurrence is not reasonably foreseeable. *Michalak*, 121 Ill. App. 3d at 576, quoting *Cunis*, 56 Ill. 2d at 380-81. The court found that the construction of a guardrail at the site conceded foreseeability: that someone might deviate from the roadway. *Michalak*, 121 Ill. App. 3d at 576.

■ Even though *Michalak* and *Cunis* stress whether the accidents were reasonably foreseeable, the *Cunis* court noted that "the existence of a legal duty is not to be bottomed on the factor of foreseeability alone." *Cunis*, 56 Ill. 2d at 375. "Instead, we must balance the foreseeability of the harm against the burdens and consequences that would result from the recognition of a duty." *Hutchings v. Bauer*, 149 Ill. 2d 568, 571, 599 N.E.2d 934 (1992), citing *Cunis*, 56 Ill. 2d at 375, and *Lamkin v. Towner*, 138 Ill. 2d 510, 522-23, 563 N.E.2d 449 (1990). See also *Bucheleres*, 171 Ill. 2d at 456 (to determine whether the common law imposes a duty, Illinois courts examine four factors: the likelihood of injury, the reasonable foreseeability of such injury, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on the defendant).

In *Kubala* the court reviewed whether the plaintiff stated a cause of action upon which relief could be granted. *Kubala*, 17 Ill. App. 2d at 467. The plaintiff alleged that the defendant had placed a row of concrete posts on his land near a curved roadway. *Kubala*, 17 Ill. App. 2d at 468. The victim was a passenger in a car that left the roadway at the curve and struck the concrete posts. *Kubala*, 17 Ill. App. 2d at 465. The court noted that the general rule applicable to this case was found in the Restatement (Second) of Torts, section 368:

"A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to [them]." Restatement (Second) of Torts § 368, at 268 (1965).

The court did not address the issue of duty, but found that the plaintiff stated a cause of action. *Kubala*, 17 Ill. App. 2d at 469-70. *Kubala* is not helpful. The case does not address the issue of duty and involves a private land owner rather than a municipality.

A more recent case and, we believe, one dispositive of the case here, is *DiBenedetto v. Flora Township*, 153 Ill. 2d 66, 605 N.E.2d 571 (1992). In *DiBenedetto* the victim's car crossed an oncoming lane of traffic, then crossed a five- to seven-foot-wide shoulder and crashed in a drainage ditch. The plaintiff maintained that the steepness of the ditch and its proximity to the edge of the paved road were dangers to traffic. Our supreme court noted that the ditch was not designed for vehicular traffic. *DiBenedetto*, 153 Ill. 2d at 70. The court found that the township did not have a duty to maintain the drainage ditch in a safe condition for vehicular traffic. Although the accident was foreseeable, the common law will not impose a duty on a municipality to keep a drainage ditch safe for vehicles. *DiBenedetto*, 153 Ill. 2d at 70-72. The burden of such a duty is far too great. *DiBenedetto*, 153 Ill. 2d at 75 (Miller, C.J., concurring, joined by Freeman, J.).

Plaintiffs attempt to distinguish *DiBenedetto*. They argue that applying *DiBenedetto* to this case expands the holding to effectively confine the duty of the City to maintain only the traveled roadways. Plaintiffs argue there are several reasons for not doing so. First, plaintiffs maintain that emergency vehicles routinely drive on or across medians to avoid traffic in case of emergency, and they cite to the fire truck driver's testimony in support. Plaintiffs conclude that it is foreseeable that emergency vehicles might enter the median. If so, the City has a duty to make the median reasonably safe and free from obstructions for emergency vehicles. Second, plaintiffs argue *DiBenedetto* can be distinguished. Here, the median adjoined the roadway and, unlike the drainage ditch, was not separated from the roadway by a shoulder.

We disagree. Even if we were to concede that fire trucks "routinely" drive on raised medians, the fire truck driver, in his testimony, also pointed out that emergency vehicles go "potentially everywhere." The hypothetical cases are endless, from playgrounds to pedestrian shopping malls—wherever there is an emergency or fire. A duty to

make safe all property that may foreseeably be used by emergency vehicles is a duty without limit.

The court wrote in *DiBenedetto*, that "[w]hile this accident was foreseeable to the extent that, in retrospect, all accidents are foreseeable, this is not sufficient to enlarge the township's duty." *DiBenedetto*, 153 Ill. 2d at 72.

■ A municipality need only maintain the roadways in a safe and passable condition. That the area surrounding the roadway is unsafe for vehicular travel is not the sort of defect for which a municipality is liable. *DiBenedetto*, 153 Ill. 2d at 71. "Just as a municipality is only required to maintain its streets and sidewalks for their normal and intended uses, a township is only required to maintain the traveled way, shoulders, and drainage ditches according to their normal and intended uses." *DiBenedetto*, 153 Ill. 2d at 71-72, citing *Warchol v. City of Chicago*, 75 Ill. App. 3d 289, 294, 393 N.E.2d 725 (1979). An exception to this rule for emergency vehicles would enlarge the duty of the City in a way we believe is incompatible with the supreme court decision in *DiBenedetto*.

The trial court erred in denying the motion for a judgment notwithstanding the verdict.

Judgment reversed.

GORDON, J., concurs.

JUSTICE COUSINS, dissenting:
I dissent.

The record in the instant case establishes that emergency city vehicles used the medians as and when necessary to get around traffic. Therefore, the use of the median in the case at bar by the emergency vehicle was both permissible and, based on the record in this case, foreseeable.

Although vehicles are permitted to use the medians, the City does contend that it has no duty to maintain or make improvements to the medians in a manner that prevents a dangerous condition to any vehicles that use the median. The majority, on appeal, adopts the City's contention. However, the Illinois Supreme Court declared more than a quarter century ago that "when a city creates a hazardous condition and someone is injured as a consequence it must respond in damages." *Baran v. City of Chicago Heights*, 43 Ill. 2d 177, 181, 251 N.E.2d 227 (1969).

Further, section 3—102(a) of the Local Governmental and Governmental Employees Tort Immunity Act (the Act) provides:

> "[A] local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property." 745 ILCS 10/3—102(a) (West 1994).

Therefore, under the Act, the City is liable if, after it constructs or improves public property "it appears from its use that [the City] has created a condition that is not reasonably safe." 745 ILCS 10/3—103(a) (West 1994). Liability arises when the undertaken improvement itself creates an unreasonably dangerous condition. *Ross v. City of Chicago*, 168 Ill. App. 3d 83, 87, 522 N.E.2d 215 (1986).

The City cites the supreme court's decision in *DiBenedetto v. Flora Township*, 153 Ill. 2d 66, 605 N.E.2d 571 (1992), to support its contention that it owed no duty under the circumstances in this case. However, *DiBenedetto* is distinguishable from the present case. In *DiBenedetto*, the decedent's automobile crossed over the oncoming traffic lane, entered a five- to seven-foot-wide shoulder area on the edge of a paved roadway, crossed over the shoulder, landed in the drainage ditch and immediately overturned, killing the decedent. The plaintiff maintained that the drainage ditch alongside the road was not safe for vehicular traffic and sought to hold the township liable for its failure to make the drainage ditch safe for vehicular traffic. *DiBenedetto*, 153 Ill. 2d at 70. The supreme court found that the accident was not of the type that could have been expected under normal driving circumstances and held that there was no duty to make the drainage ditch safe for vehicular travel. *DiBenedetto*, 153 Ill. 2d at 72.

Unlike *DiBenedetto*, the instant case involves an emergency vehicle. Also, the *DiBenedetto* roadway, shoulder and ditch are dissimilar. Further, the record establishes that emergency vehicles routinely drive on or across medians to get around traffic in the city. Additionally, in the instant case, it was foreseeable that emergency vehicles would travel onto and traverse the median. Here, defendant had a duty either to make the median reasonably safe and free of obstructions, or warn of obstructions on the median that were obscured so that emergency personnel could have warning that the median was not safe to traverse.

Still further, unlike *DiBenedetto*, the record establishes that the area where the incident occurred in this case directly adjoins the roadway. Again, it was reasonably foreseeable that an emergency vehicle might come into contact with an excavation or other artificial condition built adjacent to a roadway. See *Kubala v. Dudlow*, 17 Ill. App. 2d 463, 469, 150 N.E.2d 643 (1958).

In this appeal, I agree with the plaintiff's contention that "the is-

sue *** centers on the City's duty in making 'improvements' to medians and to warn of dangers relating to obstacles on such medians, when it knows that they are routinely used by emergency vehicles and it is foreseeable that they could be used in other emergency situations." The Illinois Supreme Court has addressed this issue and has stated:

> "[W]hen a city creates a hazardous condition and someone is injured as a consequence it must respond in damages, just as others are required to do. *** A municipal corporation, like an individual or a private corporation, is required to exercise its rights and powers with such precautions as shall not subject others to injury. The rule which protects it in the exercise of its governmental functions should not be construed to relieve [it] from liability when the plan devised, if put in operation, leaves the city's streets in a dangerous condition for public use." *Baran v. Chicago Heights*, 43 Ill. 2d at 181, citing *City of Chicago v. Seben*, 165 Ill. 371, 46 N.E. 244 (1897).

The decision of the trial court should be affirmed.