**Claudia GORRELL, Individually, and as Next Friend for Christy Eisen, a Minor, Appellant,**

v.

**TEXAS UTILITIES ELECTRIC COMPANY, Appellee.**

No. 2–95–042–CV.

Court of Appeals of Texas, Fort Worth.

Dec. 29, 1995.

Rehearing Overruled Feb. 22, 1996.

Carol Ann Carson, John S. Jose, Jose, Henry & Brantley, Fort Worth, for appellant.

C. Matthew Terrell, Estil A. Vance, Jr., Shayne D. Moses, Cantey & Hanger, Fort Worth, for appellee.

Before DAY, BRIGHAM and LIVINGSTON, JJ.

## OPINION

BRIGHAM, Justice.

Claudia Gorrell, plaintiff below, appeals a summary judgment granted in favor of defendant, Texas Utilities Electric Company ("TU Electric"). Gorrell sued on behalf of Christy Eisen, who suffered severe and permanent injuries in a collision between the car in which she was riding and a light pole owned by TU Electric. Because we agree with the trial court's ruling that TU Electric was able to establish as a matter of law that the utility company owed no duty to Eisen, we affirm.

## FACT SUMMARY

Eisen was riding in the front passenger seat of an automobile driven by Michelle Joynt around 3 p.m. on September 28, 1990. A third young woman, Gina Hunter, was riding in the rear passenger seat. As the car was headed northbound in the 5700 block of Haltom Road, it left the roadway and struck a light standard located just under six feet from the roadway. Eisen suffered severe and permanent injuries to her head, back, arms, torso, internal organs, pelvis, and legs.

Gorrell sued TU Electric, claiming that it was negligent in its installation of the light standard. Specifically, Gorrell alleged that the light standard was located too close to a roadway authorized to carry traffic at speeds up to 50 miles per hour and that TU Electric failed to install a breakaway light standard.

TU Electric filed its Motion for Summary Judgment and Brief In Support Thereof, claiming: (1) the light standard was not the proximate cause of the accident; (2) it had no duty to locate the light standard further from the road or install a breakaway base; and (3) Gorrell was collaterally estopped from seeking additional damages after having sued the Joynt family and its insurance carrier.

In her response to TU Electric's Motion for Summary Judgment, Gorrell filed an affidavit from Jarvis Michie, a consulting highway safety engineer and registered professional engineer designated as an expert witness, and deposition excerpts from Christopher Denney, one of the Haltom City Police Department detectives, and Kent Scott, the principal engineering analyst with TU Electric.

At the hearing on the Motion for Summary Judgment, Gorrell received TU Electric's objections to Michie's affidavit. After the hearing, the trial court entered an order sustaining the objections to the affidavit and an order granting TU Electric's summary judgment. Gorrell then filed a Motion for New Trial or, Alternatively, for Reconsideration, claiming that the trial court erred in sustaining TU Electric's objections to the Michie affidavit. Gorrell also attached a copy of a Judgment *Nunc Pro Tunc* entered in her

lawsuit against the Joynt family and their insurance company. The trial court then denied Gorrell's motion.

## POINT OF ERROR ONE

In her first point of error, Gorrell claims the trial court erred in granting TU Electric's Motion for Summary Judgment. She claims a genuine issue of material fact exists as to whether the position and/or design of the light standard was a proximate cause of Eisen's injury and damages. Gorrell also claims there is a fact question as to whether TU Electric placed the light standard a reasonable distance from the road and as to the foreseeability of a collision.

Gorrell relies on Scott's deposition testimony that TU Electric was responsible for design and installation of the pole made the basis of this suit. Gorrell claims that nothing in Scott's files shows that the person responsible for designing the street lighting system and placement of the pole knew what the parameters of the right-of-way were. Gorrell asserts that, although it would be acceptable under TU Electric's policies for a surveyor to actually determine how far the poles were going to be from the curb, there is no indication that anyone from TU Electric actually reviewed the staking survey before installation. Gorrell highlights Scott's testimony that there was no indication that anyone from TU Electric actually examined or approved of the light standard's location.

Gorrell also points to Scott's testimony that he could envision a driver leaving the road to avoid a collision, that a car might hit the light standard if the vehicle left the road, and that people in the car could be injured if the car struck a light standard. Further, Gorrell cites TU Electric's *Transportation and Traffic Engineering Handbook,* which acknowledges the danger of light poles and suggests the use of breakaway poles when possible:

> Luminaire supports are hazardous roadside objects and, for safety, the number should be minimized and they should be strategically located. Further, breakaway supports should be used where applicable. Supports should be set as far back as practicable, with the luminaire mounted over or near the curb or shoulder.

Gorrell claims that Scott did not consider the travelling public's safety in deciding what type of pole to install because he did not consider that to be relevant to his job. Scott acknowledged that the closer a pole is to the road, the more likely it is to be struck by a car leaving the road and that if a pole can be placed farther from the road and still light it adequately, it should be moved. Finally, Scott testified that he was not aware of any TU Electric guidelines on when to use a breakaway pole.

In asserting that the light standard's placement was a cause-in-fact of Eisen's injuries, Gorrell avers that it is undisputed that the vehicle collided with the pole, causing her injuries. Gorrell contends that had the light standard been located three feet further from the roadway, the collision, and Eisen's injuries, would not have occurred. Gorrell also maintains that the collision was foreseeable and that the position and design of the light standard was a cause-in-fact of the impact and the severity of Eisen's injuries. She concludes that there are material fact questions regarding whether the light standard was placed a reasonable distance from the roadway and whether the collision was foreseeable.

TU Electric contends that it negated two of the elements of any negligence claim: duty and causation. In arguing that it had no duty to locate the light standard further from the roadway or to install a breakaway base, the utility avers that Joynt's vehicle was being driven in an extraordinary fashion when it made contact with the light pole and that under such circumstances, it cannot be found liable.

TU Electric then notes that proximate cause consists of cause-in-fact and foreseeability and asserts that neither element is present in the instant lawsuit. TU Electric says that Joynt's driving was both negligent and unlawful and that it was her operation of the automobile which caused Eisen's injuries. TU Electric contends that Texas law does not require one to foresee someone leaving the road after jumping the curb and driving on adjacent, unpaved land and cites *Hen-*

*dricks v. Todora,* 722 S.W.2d 458, 461 (Tex. App.—Dallas 1986, writ ref'd n.r.e.) (op. on reh'g); *Watkins v. Davis,* 308 S.W.2d 906, 909 (Tex.Civ.App.—Dallas 1957, writ ref'd n.r.e.). TU Electric argues that the light standard posed no risk to a driver properly using the roadway and calls the placement of the light standard a prior and remote cause of Eisen's injuries.

■ In a summary judgment case, the issue on appeal is whether the movant met its summary judgment burden by establishing that no genuine issue of material fact exists and that movant is entitled to judgment as a matter of law. *See* TEX.R.CIV.P. 166a(c); *Cate v. Dover Corp.,* 790 S.W.2d 559, 562 (Tex.1990); *City of Houston v. Clear Creek Basin Auth.,* 589 S.W.2d 671, 678 (Tex. 1979). The burden of proof is on the movant, *Acker v. Texas Water Comm'n,* 790 S.W.2d 299, 301–02 (Tex.1990), and all doubts about the existence of a genuine issue to a material fact are resolved against movant. *Cate,* 790 S.W.2d at 562; *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). Therefore, we must view the evidence and its reasonable inferences in the light most favorable to the nonmovant. *Id.*

■ In deciding whether there is a material fact issue precluding summary judgment, all conflicts in the evidence will be disregarded and the evidence favorable to the nonmovant will be accepted as true. *Montgomery v. Kennedy,* 669 S.W.2d 309, 311 (Tex.1984); *Farley v. Prudential Ins. Co.,* 480 S.W.2d 176, 178 (Tex.1972). Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am.,* 391 S.W.2d at 47.

■ In a negligence case, a plaintiff must establish the existence of a legal duty on the part of the defendant. *See Abalos v. Oil Dev. Co. of Texas,* 544 S.W.2d 627, 631 (Tex.1976). Not only must the duty be established, but the plaintiff must also show the duty was breached and that the injury was the result of the breach. *Dion v. Ford Motor Co.,* 804 S.W.2d 302, 309 (Tex.App.—Eastland 1991, writ denied). Proximate cause consists of cause-in-fact and foresee-

ability. *McClure v. Allied Stores of Texas, Inc.,* 608 S.W.2d 901, 903 (Tex.1980).

■ A defendant is entitled to summary judgment if the summary judgment evidence establishes, as a matter of law, that at least one element of a plaintiff's cause of action cannot be established. *Centeq Realty, Inc. v. Siegler,* 899 S.W.2d 195, 197 (Tex. 1995); *Rosas v. Buddies Food Store,* 518 S.W.2d 534, 537 (Tex.1975). To accomplish this, the defendant-movant must present summary judgment evidence that negates an element of the plaintiff's claim. Once this evidence is presented, the burden shifts to the plaintiff to put on competent controverting evidence that proves the existence of a genuine issue of material fact with regard to the element challenged by the defendant. *Centeq Realty Inc.,* 899 S.W.2d at 197.

■ Although both Gorrell and TU Electric state in their briefs that the issue before this court is one of first impression, the Texas Supreme Court recently addressed this issue under similar facts. We rely on its holding in *City of McAllen v. De La Garza,* 898 S.W.2d 809 (Tex.1995) and find that TU Electric did not owe a duty to Eisen under these facts.

In *De La Garza,* the Supreme Court was called upon to determine whether a city, as owner of a "caliche" pit abutting a highway, had a duty to make the pit safe or warn those who were not traveling with reasonable care upon the adjoining highway. After a review of section 368 of the First and Second Restatement of Torts, the Supreme Court concluded that where an artificial condition is created so near an existing roadway that it poses an unreasonable risk to those accidentally brought into contact with it while traveling with reasonable care, a duty is owed to: (1) those traveling on the highway; or (2) those who foreseeably deviate from it in the ordinary course of travel. *Id.* at 811 (citing RESTATEMENT (SECOND) OF TORTS § 368 cmt. g) (1965)). The *De La Garza* court then held that a traveler is not in the ordinary course of travel unless the deviation from the road is a normal incident of travel. *Id.* In finding that the City of McAllen did not owe a duty to the motorist in *De La Garza,* the Supreme

Court reviewed numerous instances from a variety of jurisdictions where deviations from the roadway were found not to constitute normal incidents of travel. RESTATEMENT (SECOND) OF TORTS § 368. We have studied these examples, and although we do not reproduce them here, we find them instructive.

Denney, the police officer who investigated the collision, concluded that Joynt failed to apply her brakes and that the automobile left the road. Denney asserted that a car properly driving on the paved roadway would have passed the light standard without making contact, that the light standard was clearly visible, and that had Joynt kept her car on the road, the collision would never have occurred. His testimony is undisputed. Regardless whether Joynt deliberately swerved to avoid striking a car she thought was entering her lane or simply left the roadway due to a moment's inattention, we agree with the trial court's finding that she was not traveling with reasonable care upon the highway nor was her deviation in the ordinary course of travel. Because TU Electric owed no duty under these circumstances, summary judgment was proper. Point of error one is overruled.

### POINT OF ERROR TWO

Gorrell next asserts that the trial court abused its discretion in overruling her Motion for New Trial or, Alternatively, for Reconsideration because she had no opportunity to amend Michie's affidavit. Gorrell notes that TU Electric filed its Motion for Summary Judgment on January 10, 1994, and Gorrell's response with Michie's affidavit was filed on March 29, 1994. The hearing on the Motion for Summary Judgment was held on August 12, 1994, and it was at this hearing, Gorrell asserts, that she first received a copy of TU Electric's objections to Michie's affidavit. On September 14, 1994, the trial court entered its order sustaining the utility's objections to Michie's affidavit and the order granting summary judgment.

Gorrell argues that she should not have been required to amend the affidavit before the trial court's ruling on it, and she says she filed Michie's amended affidavit in an attempt to cure the objections while the trial court still had plenary power. She claims it was error for the trial court to overrule her motion.

The test for whether a trial court has abused its discretion is whether its act was arbitrary or unreasonable. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex.1985), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2279, 90 L.Ed.2d 721 (1986). Gorrell neglected to attach to Michie's affidavit sworn or certified copies of the extraneous documents referred to in the affidavit itself as required by Rule 166a(f) of the Texas Rules of Civil Procedure. This failure constituted a defect in the substance of the affidavit, and the trial court was not required to give the offering party the chance to amend. *Ceballos v. El Paso Health Care Sys.*, 881 S.W.2d 439, 445 (Tex.App.—El Paso 1994, writ denied). We note that the substantive additions to the text of Michie's affidavit, as well as the sworn or certified attachments, were all in existence at the time the motion for summary judgment was filed and should have been discovered before the hearing. The trial court was within its discretion in refusing to consider any new, amended affidavit or to reconsider the Motion for Summary Judgment. *See Methodist Hospitals of Dallas v. Corporate Communicators, Inc.*, 806 S.W.2d 879, 883 (Tex.App.—Dallas 1991, writ denied); *Martin v. First Rep. Bank, Fort Worth*, 799 S.W.2d 482, 488–89 (Tex.App.—Fort Worth 1990, writ denied). Point of error two is overruled.

The judgment of the trial court is affirmed.

LIVINGSTON, J., concurs with opinion.

LIVINGSTON, Justice, concurring.

I concur in the result of the court's opinion but respectfully disagree with its opinion to the extent it finds, as a matter of law, that TU Electric owed no duty to the plaintiff under the facts and circumstances of this case. I believe the case of *City of McAllen v. De La Garza*, 898 S.W.2d 809 (Tex.1995) is distinguishable under these facts. The *De La Garza* opinion discusses when the duty to a driver travelling on a highway exists. The opinion deviates from the main prior decision, *City of Fort Worth v. Lee*, 143 Tex. 551,

186 S.W.2d 954 (1945) which found no duty was owed by an adjacent landowner because the condition created by the landowner was in existence *prior* to the time the street was constructed and dedicated. Instead, the *De La Garza* court focuses on section 368 of the RESTATEMENT (SECOND) OF TORTS which the Texas Supreme Court has followed. *See, e.g., Alamo Nat'l Bank v. Kraus,* 616 S.W.2d 908, 911 n. 3 (Tex.1981).

I believe that the summary judgment motion and summary judgment evidence could create a factual issue for the trier of facts. Here, the facts fall somewhere in between those of the *City of Fort Worth* and *Kraus.*

In the *City of Fort Worth,* the excavation existed prior to the creation of the street and was apparently an inherently dangerous condition in and of itself. Under that scenario, the Texas Supreme Court held the city, which was charged with maintaining the roadway, owed a duty to an injured third party since the condition existed when the roadway was built. *City of Fort Worth,* 186 S.W.2d at 957.

In *Kraus,* the dangerous condition was created by an adjacent owner and the dangerous condition itself created the hazard which injured the person *on* the highway. The damage occurred on the highway when an unsupported wall fell on and killed a motorist in a passing car.

While the standard or light pole in and of itself could not be deemed to be a inherently dangerous condition, it would appear that there is a factual question created as to whether the driver, under these facts and circumstances, deviated from the ordinary course of travel.

According to comment g, section 368 of the RESTATEMENT (SECOND) OF TORTS as adopted in the *De La Garza* opinion:

[The duty does not arise] where the traveler intentionally deviates from the highway for a purpose not reasonably connected with travel upon it.... Likewise this Section has no application where the deviation is one not reasonably to be anticipated, or is for a purpose not normally connected with the travel, as where the traveler runs off of the highway when pursued by crimi-

nal seeking his life. The distinction is ... between those which are normal incidents of travel and those which are not.

RESTATEMENT (SECOND) OF TORTS § 368 cmt. g (1965). The Supreme Court in applying this standard held, "He was not traveling with reasonable care upon the highway nor was his deviation in the ordinary course of travel." *De La Garza,* 898 S.W.2d at 812. (Presumably, the evidence of the blood alcohol of the driver and the fact that he fell asleep at the wheel weighed heavily with the court.)

Here, if the nonmovant presented some evidence that the driver was traveling with reasonable care and that her deviation was in the ordinary course of travel, the movant's motion for summary judgment would have failed. Evidence that favors the movant's position will not be considered unless it is uncontroverted. *Great Am. Reserve Ins. Co. v. San Antonio Plumbing Supply Co.,* 391 S.W.2d 41, 47 (Tex.1965). However, since there is no summary judgment evidence in the record showing the non-movant's "reasonableness" or that her "deviation" was normal, I concur in the result.