ROBERT ZAKOFF, as Special Adm'r of the Estate of Joseph Zakoff, Deceased, Plaintiff-Appellant, v. CHICAGO TRANSIT AUTHORITY, Defendant-Appellee.

First District (5th Division) No. 1—00—3642

Opinion filed December 20, 2002.

Reibman, Hoffman, Baum, Hirsch & O'Toole, of Chicago (Nancy L. Hirsch, of counsel), for appellant.

Robert S. Rivkin, General Counsel of Chicago Transit Authority, of Chicago (Thomas J. Bamonte, Ellen Partridge, and Cheryl K. Lipton, of counsel), for appellee.

JUSTICE REID delivered the opinion of the court:

The plaintiff, Robert Zakoff (Zakoff), who is serving as special administrator of the estate of his deceased son, Joseph Zakoff (Joseph), appeals the trial court's order which granted the defendant Chicago Transit Authority's (CTA) motion for summary judgment. For the reasons that follow, we affirm the trial court's decision.

## THE FACTS

On February 4, 1996, Joseph was involved in an accident while driving his vehicle westbound on Interstate 90 (Kennedy expressway) near Bryn Mawr Avenue in Chicago, Illinois. His vehicle left the roadway, hit a light pole, skidded across a patch of grass and collided with a concrete barrier, before going through a chain-link fence and crashing into the side of the CTA Nagle substation building. Joseph died as a result of injuries he received during the accident.

The Nagle substation is surrounded by a chain-link fence. The concrete barrier that Joseph hit abuts the chain-link fence surrounding the substation.

On January 31, 1997, Zakoff filed a three-count complaint, wherein he alleged that the CTA was negligent because it: (1) improperly installed the concrete barrier, (2) allowed the barrier and the surrounding area to remain in an unsafe condition, (3) failed to warn motorists of the dangerous condition, (4) allowed and permitted the

Nagle substation to remain too close to the roadway, and (5) failed to install a suitable barrier.

On March 16, 1999, Illinois State Police Trooper Roy Galazka was deposed. During his discovery deposition, Galazka testified that on February 4, 1996, he was driving westbound on the Kennedy expressway when he observed three cars pulled over on the right shoulder with their emergency flashers activated. As he got closer, Galazka saw that a light pole was down across the berm on the right shoulder. Galazka defined the berm as the "grassy area on the side of the roadway beyond the shoulder."

Galazka stated that he immediately pulled onto the right shoulder and activated his emergency lights. Galazka was the first "official" to report to the accident scene. When he pulled over, Galazka saw the top of Joseph's car to his right. After exiting his vehicle, Galazka walked over to where the vehicle was located. Galazka said that Joseph was sitting in the driver's seat. The back of the driver's seat had broken and he was fully extended to the rear with his feet still in the well beneath the dashboard on the driver's side, but the roof of the vehicle had crumpled and formed around Joseph's head. It was Galazka's belief that Joseph was already deceased at this time.

Galazka recalled that it was 19 degrees below zero with a windchill of approximately 60 degrees below zero. He remembered the road being clear on the night of the accident. Galazka, however, did say that there was ice and snow on the berm, but he could not recall the condition of the shoulder.

Galazka estimated that Joseph's vehicle traveled approximately 175 feet after it left the Kennedy expressway and struck the CTA substation building.

Edward Buczkiewicz, a senior power engineer for the CTA, was deposed on March 10, 2000. Buczkiewicz has been responsible for the maintenance of the CTA's substations since 1994. During his deposition, Buczkiewicz spoke about the Nagle substation's automobile accident history.

Buczkiewicz said a vehicle first hit the Nagle substation in 1993. The vehicle originated from Bryn Mawr Avenue as opposed to the Kennedy expressway. On December 21, 1995, a vehicle left the Kennedy expressway and collided with the container wall, fence and the Nagle substation. On August 3, 1996, again a vehicle left the Kennedy expressway and struck the southwest corner of the Nagle substation, and on September 15, 1996, a vehicle left the Kennedy expressway, striking the substation and leaving a hole.

After the accident in September 1996, Buczkiewicz wrote a letter to the Illinois Department of Transportation (IDOT) in an effort to

bring to IDOT's attention the problem of vehicles hitting the substation and raising the possibility of a guardrail being installed. Buczkiewicz said that IDOT responded by concluding that additional protection was unnecessary. Buczkiewicz stated that there have subsequently been four additional accidents involving vehicles leaving the Kennedy expressway and striking the substation. The accidents occurred in November 1996, February 1997, October 1997, and November 1998.

On April 7, 1998, Julia A. Fox was deposed. Fox worked for IDOT as its area traffic permit engineer for central Cook County. Fox stated that the concrete barrier was located on IDOT's right-of-way, which is a geographical area that is under IDOT's jurisdiction. Fox stated that the CTA needed a permit from IDOT's Bureau of Traffic in order to make any alterations to the concrete barrier. Fox said that the CTA initially requested that IDOT erect a guardrail. IDOT found a guardrail to be unwarranted. The CTA then requested a permit to build a barrier on IDOT's right-of-way, and at the time of the deposition, IDOT had yet to respond to the CTA's request.

On October 5, 1999, the discovery deposition of Fred Maamari, a structural engineer for the CTA, was taken. In 1996, Maamari was involved with implementing a guardrail to prevent vehicles from leaving the highway and striking the Nagle substation. Maamari subsequently met with an official from IDOT concerning the possibility of erecting a guardrail. He was informed by the IDOT official that another guardrail was unnecessary because of the distance between the highway and the Nagle substation.

The official informed Maamari that if the CTA still wanted to proceed and install a barrier it would need a permit from IDOT. The CTA subsequently purchased water and sand barriers. In 1998, it placed the barriers around the Nagle substation but within the chain-link fence of the structure. This was done because the CTA was waiting to receive the proper permits from IDOT and the City of Chicago.

On January 26, 2000, the CTA moved for summary judgment. In its motion the CTA argued: (1) that it had no duty to the plaintiff because it did not design, build, own or maintain the concrete barrier, (2) that it had no duty to the plaintiff because it did not design or construct the substation building, and it was only responsible for the maintenance of things within the fence line of the substation, (3) that the accident was unforeseeable, (4) that the building's location was not the proximate cause of the accident, and (5) that the action was time-barred as a result of the action not being brought within 10 years of the construction of the substation as required by the statute of repose.

On October 3, 2000, the CTA's motion for summary judgment was

granted. The trial court held that the CTA owed Joseph no duty, and it also found that the accident was unforeseeable. Zakoff subsequently filed a timely notice of appeal.

## ANALYSIS

Zakoff maintains the trial court erred when it held that the CTA owed Joseph no duty and granted summary judgment. Specifically, Zakoff maintains that the concrete barrier which abuts the Nagle substation is an appurtenance to the substation and, as such, the CTA is liable for the barrier's negligent construction and maintenance. In the alternative, Zakoff maintains that the CTA is negligent because of the dangerous proximity of the Nagle substation to the Kennedy expressway.

In response, the CTA contends that it held no duty to Zakoff because: (1) it did not construct, control, or maintain the concrete barrier, and (2) the accident was unforeseeable because of the amount of distance between the substation and the Kennedy expressway.

■ Our review of the circuit court's grant of summary judgment is *de novo*. *Natale v. Gottlieb Memorial Hospital*, 314 Ill. App. 3d 885, 888 (2000). Summary judgment is properly granted where "the pleadings, depositions, admissions, and affidavits on file, when taken together in the light most favorable to the nonmovant, show that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1998)." *Fremont Casualty Insurance Co. v. Ace-Chicago Great Dane Corp.*, 317 Ill. App. 3d 67, 73 (2000), citing *Soderlund Brothers, Inc. v. Carrier Corp.*, 278 Ill. App. 3d 606, 613-14 (1995). "In deciding whether to grant summary judgment, a court shall construe the pleadings, affidavits, depositions, admissions, and exhibits strictly against the movant and liberally in favor of the opponent." *Fillpot v. Midway Airlines, Inc.*, 261 Ill. App. 3d 237, 241 (1994). Summary judgment is a "drastic means of disposing of litigation." *Espinoza v. Elgin, Joliet & Eastern Ry. Co.*, 165 Ill. 2d 107, 113 (1995). "Therefore, where reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact." *Espinoza*, 165 Ill. 2d at 114.

■ In an action for negligence, a plaintiff must set out sufficient facts to establish that the defendant owed a duty to the plaintiff, that the defendant breached that duty, and that the breach proximately caused injury to the plaintiff. *Fris v. Personal Products Co.*, 255 Ill. App. 3d 916, 923 (1994).

A duty of care arises when the parties stand in such a relationship

to one another that the law imposes upon the defendant an obligation of reasonable conduct for the benefit of the plaintiff. *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d 507, 525 (1987). Stated differently, "[E]very person owes to all others a duty to exercise ordinary care to guard against injury which naturally flows as a reasonably probable and foreseeable consequence of his act, and *** such duty does not depend upon contract *** but extends to remote and unknown persons." *Nelson v. Union Wire Rope Corp.*, 31 Ill. 2d 69, 86 (1964).

Factors relevant in determining whether a duty exists and the scope of that duty include the foreseeability of injury, the likelihood of injury, the magnitude of the risk of injury, the burden of guarding against the injury, and the consequences of placing that burden on the defendant. *Unger v. Eichleay Corp.*, 244 Ill. App. 3d 445, 449 (1993).

■ "[T]he question of whether a duty has been breached is a factual one, left to the trier of fact to resolve." *Fillpot*, 261 Ill. App. 3d at 241. However, the "question of whether a duty exists is a question of law, and where no duty exists, summary judgement is proper because there is no possible recovery for plaintiff as a matter of law." *Ordman v. Dacon Management Corp.*, 261 Ill. App. 3d 275, 278 (1994).

The Nagle substation was built as part of the O'Hare extension project. On June 21, 1991, the City of Chicago (the City) and the CTA entered into an "Agreement for the Operation and Maintenance of the O'Hare Rapid Transit Extension" (O'Hare extension agreement). Under the O'Hare extension agreement, the City conveyed certain properties to the CTA. In particular, section 2.01 of the O'Hare extension agreement states:

> "The City does hereby grant and convey to the [CTA], subject to the terms and conditions stated herein, such rights as shall be necessary or useful to allow the [CTA] to maintain and operate the rapid transit facility, commonly known as the O'Hare Rapid Transit Extension, and any appurtenances thereto (collectively the 'ORT'), which is more specifically identified as follows:
> a. *Substations*
> Nagle, Bryn Mawr, Cumberland, Gage and O'Hare substations. Each substation shall include the building and all appurtenances, the chain link fence surrounding the building, and any paved areas and landscaping located within the fence lines."

The O'Hare extension agreement goes on to state: "[t]he title to the ORT shall remain with the City of Chicago at all times," and "[i]n no event shall the City be deemed to have conveyed to the [CTA] the use of any property other than that identified herein or any rights which exceed those necessary or useful for the operation and maintenance of the ORT."

Zakoff asserts that the concrete barrier is an appurtenance to the Nagle substation under the language in the O'Hare extension agreement. Zakoff contends that the geographic limitation in section 2.01 which reads "within the fence line" only pertains to the "paved areas and landscaping" and, consequently, the CTA was obligated to maintain the substation's appurtenances, even if they lay outside the substation's fence line.

The CTA argues that it owed no duty to Zakoff because the concrete barrier is not an appurtenance to the Nagle substation. We agree.

■ In *Dimucci Home Builders, Inc. v. Metropolitan Life Insurance Co.*, 312 Ill. App. 3d 779 (2000), an appurtenance is defined as:

"a right or privilege incidental to the property conveyed. Webster's Third New International Dictionary 107 (1986). '[U]pon conveyance of property the law implies a grant of all incidents rightfully belonging to that property at the time of conveyance and which are essential to the full and perfect enjoyment of the property.'" *Dimucci*, 312 Ill. App. 3d at 781, quoting *Bishop v. Village of Brookfield*, 99 Ill. App. 3d 483, 490 (1981).

Black's Law Dictionary defines an appurtenance as:

"[t]hat which belongs to something else; an adjunct; an appendage. Something annexed to another thing more worthy as principal, and which passes as incident to it, as a right of way or other easement to land; an outhouse, barn, garden, or orchard, to a house or messuage. [Citation.] An article adapted to the use of the property to which it is connected, and which was intended to be a permanent accession to the freehold. A thing is deemed to be incidental or appurtenant to land when it is by right used with the land for its benefit, as in the case of a way, or watercourse, or of a passage of light, air, or heat from or across the land of another." Black's Law Dictionary 103 (6th ed. 1990).

■ Here, the concrete barrier is not an appurtenance to the Nagle substation. An appurtenance is *conveyed* with the principal property. When the City conveyed the rights in and to the Nagle substation to the CTA, it did not convey the concrete barrier as well. The concrete barrier was not located on property that was conveyed to the CTA. Instead, the concrete barrier lies on property that is controlled by IDOT. The City did not convey the concrete barrier because it could not. The barrier was not the City's to convey, and, as such, the CTA held no duty to Zakoff with respect to the concrete barrier.

Next, Zakoff also maintains that the CTA breached its common law duty to maintain the Nagle substation in a reasonably safe condition. Zakoff argues that the CTA was negligent because the substation building is unreasonably in dangerous proximity to the highway.

■ "[A] duty is owed where the occurrence involved is reasonably foreseeable." *Michalak v. County of La Salle*, 121 Ill. App. 3d 574, 576 (1984), citing *Cunis v. Brennan*, 56 Ill. 2d 372 (1974). "[A]n occurrence is reasonably foreseeable if a reasonably prudent person could have foreseen as likely the events which did transpire. If those events are 'highly extraordinary' or 'tragically bizarre' or 'unique' then the occurrence is not reasonably foreseeable." *Michalak*, 121 Ill. App. 3d at 576. "A duty may be owed to a motorist who deviates from the ordinary course of travel if such a deviation was reasonably foreseeable." *Michalak*, 121 Ill. App. 3d at 576, citing *Hoffman v. Vernon Township*, 97 Ill. App. 3d 721 (1981). "In determining whether a deviation from the ordinary course of travel is reasonably foreseeable, the distance of the obstruction from the highway, from the ordinary course of travel, is relevant." *Michalak*, 121 Ill. App. 3d at 576.

■ Regarding the liability of owners or occupiers of land for artificial conditions created thereon that cause injury to travellers on an adjacent highway, Illinois courts have frequently cited to section 368 of the Restatement (Second) of Torts, which states:

"A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while travelling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who

(a) are travelling on the highway, or

(b) foreseeably deviate from it in the ordinary course of travel." Restatement (Second) of Torts § 368 (1965).

See *Gouge v. Central Illinois Public Service Co.*, 144 Ill. 2d 535, 545 (1991); *Swope v. Northern Illinois Gas Co.*, 251 Ill. App. 3d 850, 854 (1993); *Boylan v. Martindale*, 103 Ill. App. 3d 335, 344 (1982); *Hoffman*, 97 Ill. App. 3d at 725.

The official comments to the Restatement illustrate the applicability of this rule:

"[The rule] applies also to those who reasonably and expectably deviate from the highway and enter upon the abutting land in the ordinary course of travel. The possessor is required to anticipate the possibility of such deviations and to realize, where a reasonable man would do so, that the traveller so deviating may encounter danger. The public right to use the highway carries with it the right to protection by reasonable care against harm suffered in the course of deviations which may be regarded as the normal incidents of travel." Restatement (Second) of Torts § 368, Comment *e*, at 269-70 (1965).

The comments further state:

> "In determining whether the condition is one which creates an unreasonable risk of harm to persons lawfully travelling on the highway and deviating from it, the essential question is whether it is so placed that travellers may be expected to come in contact with it in the course of a deviation reasonably to be anticipated in the ordinary course of travel. Distance from the highway is frequently decisive, since those who deviate in any normal manner in the ordinary course of travel cannot reasonably be expected to stray very far. *** Distance is important, however, only as it affects the recognizable risk; and other factors, such as the nature of the condition itself, its accessibility, and the extent and character of the use of the highway, must be taken into account." Restatement (Second) of Torts § 368, Comment *h*, at 271 (1965).

■ Here, State Trooper Galazka estimated that from where Joseph's vehicle left the road, he traveled approximately 175 feet before striking the Nagle substation. The CTA's senior power engineer, Buczkiewicz, estimated the closest point of the Nagle substation sat approximately 50 to 60 feet away from the Kennedy expressway.

In *Hoffman*, 97 Ill. App. 3d at 726, we stated that "[f]or a duty to attach the person must foreseeably deviate in the ordinary course of travel." (Emphasis omitted.) We declined there to impose a duty upon a defendant utility company that maintained an electric utility pole some 12 to 16 feet off a highway and which was struck by a vehicle driven by the plaintiff administrator's decedent.

The Nagle substation sits approximately 50 feet away from the Kennedy expressway. In our society, travelling by vehicles on roadways is a much needed necessity, one that we can ill afford to do without. As such, the safety of motorists on these roadways is of utmost importance. Because of the sheer number of roadways in our country and simple space limitations, there will be instances when structures will lie in close proximity to the roadways.

In this situation, we do not believe that section 368 should be extended to include buildings that are of such a distance from a roadway. In our view, to do so would place an impractical and undue burden on landowners. We also believe that our decision is consistent with the holdings of other cases in which no duty has been found to exist despite the existence of artificial conditions near roadways. See *Hutchings v. Bauer*, 149 Ill. 2d 568 (1992) (barrier made of posts and logs located 15 to 20 feet from road); *Gouge*, 144 Ill. 2d 535 (utility pole approximately 15 feet from paved surface); *Battisfore v. Moraites*, 186 Ill. App. 3d 180 (1989) (cement pillar two feet from roadway); *Hoffman*, 97 Ill. App. 3d 721 (utility pole located 12 to 15 feet from

road); *West v. Faurbo*, 66 Ill. App. 3d 815 (1978) (concrete block four or five feet from sidewalk).

## CONCLUSION

For the foregoing reasons, the decision of the trial court is affirmed.

Affirmed.

CAMPBELL, P.J. and QUINN, J., concur.