**MILITARY HIGHWAY WATER SUPPLY CORP.,
Petitioner,**

**v.**

**Francisca MORIN, et al., Respondents.**

No. 03–0949.

Supreme Court of Texas.

Jan. 21, 2005.

Thomas F. Nye, Linda C. Breck, Robert William Clore, Brin & Brin, P.C., Corpus Christi, Anthony B. James, Hodge James & Garza, LLP, Harlingen, William L. Hubbard, The Hernandez Law Firm, Edinburg, for Petitioner.

William R. Edwards III, John Blaise Gsanger, The Edwards Law Firm, L.L.P., James B. Ragan, Law Offices of James B. Ragan, Corpus Christi, Jose E. Chapa, Yzaguirre & Chapa, McAllen, for Respondents.

Robert L. Galligan, Jones Galligan Key & Lozano, Weslaco, for Amicus Curiae.

PER CURIAM.

A possessor of land who allows an excavation to remain on the land owes a duty to persons who encounter the excavation after (1) traveling with reasonable care on the highway *and* (2) foreseeably deviating from the highway in the ordinary course of travel. Restatement (Second) of Torts § 368 (1965). In *City of McAllen v. De La Garza*, 898 S.W.2d 809, 811 (Tex.1995), we concluded that a traveler who deviates from the highway is not "in the ordinary course of travel" unless the deviation is a normal incident of travel. The deviation in that case—in which the car traveled approximately 250 feet from the lane of travel before coming to rest in the City's caliche pit located within ten feet of the roadway—was not in the ordinary course of travel. *Id.* at 812. In this case, the court of appeals relied on *De La Garza* to conclude that the deviation occurred in the ordinary course of travel. 114 S.W.3d 728, 734–36. We conclude, however, that the court's opinion conflicts with our holding in *De La Garza*[1] and that Military Highway owed no duty to the respondents. We accordingly reverse the court of appeals' judgment and render judgment that the respondents take nothing.

This is a wrongful-death and survivorship action stemming from an automobile

---

1. *See* Tex. Gov't Code § 22.001(a)(2).

accident that occurred on and adjacent to farm-to-market road 732 ("FM 732") in Cameron County. FM 732 is a two-lane road with a posted speed limit of fifty-five miles per hour. Because Cameron County has no local stock laws in place, livestock can roam freely near the vehicular traffic along FM 732. *See* Tex. Const. art. XVI, § 23 (delegating to Legislature the power to pass laws regulating livestock); Tex. Agric. Code §§ 143.024 (permitting elections to adopt local stock laws), 143.101 (excluding numbered farm-to-market roads from definition of "highway"), 143.102 (prohibiting owners or caretakers from knowingly allowing animals to traverse or roam at large on right-of-way of "highway"); *see also Gibbs v. Jackson*, 990 S.W.2d 745, 747–50 (Tex.1999) (discussing duties regarding restraint of livestock).

On June 3, 1996, Military Highway Water Supply Corporation ("Military Highway"), a non-profit public utility, dug a hole to install a water meter on its utility easement.[2] The hole was approximately three feet in diameter and was located more than twenty feet from the edge of FM 732. Military Highway's manager testified that, because the Texas Department of Transportation also had an easement over the area, Military Highway was required to comply with the Department's regulations. Those regulations and Military Highway's corresponding policies required Military Highway to fill the excavation after completing the installation. Military Highway, however, did not fill in the hole. In July of 1996, a neighboring landowner notified Military Highway that the excavation had not been filled, but the public utility took no further action.

On the morning of August 1, 1996, Mercedes Melendez Morin ("Morin") was driving his car northbound approximately fifty to fifty-five miles per hour down FM 732. Ausencio Bautista Ramos ("Bautista") was a passenger in the front seat, and two other passengers were seated in the back. A horse crossed the road, and the vehicle struck the horse. One of the back-seat passengers saw the horse before the impact and had time to duck behind the front seat prior to the collision. Military Highway's expert testified that, under the circumstances, Morin had about two and a half seconds to react to the horse; however, it is undisputed that Morin never applied the brakes and did not swerve to avoid the animal. After striking the horse, the vehicle veered to the left and entered the southbound lane. It then left the pavement and traveled through an unimproved shoulder on the opposite side of the highway. The car ultimately reached Military Highway's open excavation after traveling approximately 535 feet from the point of impact with the horse. There, the car's right-front wheel climbed a mound of dirt piled next to the hole, and the left-front wheel fell into the hole. The car then rolled to the left, flipped, and landed upside down against a tree 633.6 feet from the point of the initial impact with the horse. Morin and Bautista died as a result of the accident; the two back-seat passengers survived.

Several family members and the estates of Morin and Bautista sued Military Highway for negligence. After a trial on the merits, the jury found that Military Highway and Morin were respectively 52% and 48% responsible and awarded damages to the Morin and Bautista plaintiffs. The trial court entered judgment on the verdict. Military Highway appealed, asserting that it owed no duty to Morin and

---

**2.** The easement gave Military Highway the "right to operate, inspect, repair, maintain, replace, and remove utility pipelines."

Bautista as a matter of law, and that there was legally insufficient evidence that the accident was a foreseeable result of Military Highway's failure to fill the excavation. 114 S.W.3d at 732. The court of appeals held that Military Highway owed a duty to Morin and Bautista under the facts of this case, and that there was legally sufficient evidence to support the foreseeability finding. *Id.* at 736, 738–39. Military Highway petitioned this Court for review.

■ As we stated in *City of McAllen v. De La Garza*, 898 S.W.2d 809, 810 (Tex. 1995), "[t]he existence of a legal duty is a question of law for the court to decide from the facts surrounding the occurrence in question." In that case, the City owned a caliche pit that was approximately thirty feet deep and, in some places, within ten feet of the adjoining roadway. *Id.* After a driver with a blood alcohol content of .11 blacked out or fell asleep, his car traveled approximately 250 feet (across the lane with oncoming traffic, through a wire fence, and over a dirt embankment) before becoming airborne, colliding with a small tree, and coming to rest upside down at the bottom of the caliche pit. *Id.* De La Garza, a passenger who had a blood alcohol content of .10 and was not wearing a seatbelt, was thrown from the car and killed. *Id.* De La Garza's family sued the City for wrongful death, arguing that the City was negligent by failing to warn travelers of the dangerous condition and in failing to make that condition safe. *Id.*

In *De La Garza*, this Court applied section 368 of the Restatement (First and Second) of Torts to hold that the City did not owe a duty to De La Garza as a matter of law, because he was not traveling with reasonable care upon the highway and his

deviation was not in the ordinary course of travel. *Id.* at 812 (finding section 368 determinative); *see also Gorrell v. Tex. Utilities Elec. Co.*, 915 S.W.2d 55, 59–60 (Tex. App.-Fort Worth 1995, pet. denied) (relying on *De La Garza*, 898 S.W.2d at 811–12). We did not reach the issue of whether the deviation was foreseeable because we held that, " 'foreseeable' or not, no duty was owed by the City under the circumstances of the case." 898 S.W.2d at 812.

■ Section 368 of the Restatement (Second) of Torts defines the circumstances under which a duty is owed to individuals who are injured after deviating from an adjoining roadway onto the land. That section provides:

> A possessor of land who creates or permits to remain thereon an excavation or other artificial condition so near an existing highway that he realizes or should realize that it involves an unreasonable risk to others accidentally brought into contact with such condition while traveling with reasonable care upon the highway, is subject to liability for physical harm thereby caused to persons who
>
> (a) are traveling on the highway, or
>
> (b) foreseeably deviate from it in the ordinary course of travel.

Restatement (Second) of Torts § 368.[3] In *De La Garza*, we stressed that this section speaks to a duty only to those persons "who were traveling with reasonable care upon the highway *and* who foreseeably deviated from it *in the ordinary course of travel.*" 898 S.W.2d at 811 (emphasis in original). In this case, the jury found that Morin's negligence proximately caused his death and that he was 48% responsible for the occurrence. Neither Morin nor Bautista challenged those findings on appeal.

---

**3.** Although section 368 refers specifically to "possessor[s] of land," we conclude that the section should apply with equal force to easement holders, such as Military Highway, that are responsible for filling the excavation in question.

The court of appeals nonetheless determined that Morin had "no fault" and that he was propelled across the field "unerringly." 114 S.W.3d at 735, 738. Even assuming, contrary to the verdict, that Morin was traveling with reasonable care on FM 732, Military Highway owed him and Bautista a duty only if his deviation from the road occurred "in the ordinary course of travel." *De La Garza,* 898 S.W.2d at 811. The court of appeals concluded that it did. We disagree.

Under section 368, "a traveler is not 'in the ordinary course of travel' unless the deviation from the road is a normal incident of travel." *Id.; see also* Restatement (Second) of Torts § 368 cmt. g. Thus, the section does not impose a duty to travelers whose "deviation is one not reasonably to be anticipated ... or is for a purpose not normally connected with travel." Restatement (Second) of Torts § 368 cmt. g, *quoted in De La Garza,* 898 S.W.2d at 811; *see also id.* cmt. e (section applies to those who "reasonably and expectably deviate from the highway"). In determining whether a deviation is reasonably to be expected in the ordinary course of travel, the distance between the highway and condition is "frequently decisive, since those who deviate in any normal manner in the ordinary course of travel cannot reasonably be expected to stray very far." *Id.* cmt. h, *cited with approval in Jacque v. Pub. Serv. Co.,* 890 P.2d 138, 139 (Colo.Ct. App.1994), and *Zakoff v. Chi. Transit Auth.,* 336 Ill.App.3d 415, 270 Ill.Dec. 314, 782 N.E.2d 873, 879–81 (2002); *see also id.* cmt. g, illus. 1–5. Distance, however, should generally be considered in conjunction with other factors, such as the character and use of the highway and the nature

and accessibility of the condition itself. *Id.* cmt. h.

The question here is whether Morin and Bautista's deviation from FM 732, triggered by hitting a horse while traveling fifty to fifty-five miles per hour, was a normal incident of travel—an occurrence that Military Highway could have reasonably anticipated. The excavation left by Military Highway was more than twenty feet from the edge of the southbound lane of FM 732.[4] Before reaching the excavation, Morin and Bautista traveled over 500 feet from the point of impact with the horse, careening from the northbound lane to the southbound lane, across a sixteen-foot unimproved shoulder, and onto the abutting land. This is a greater deviation from normal travel than the deviation in *De La Garza,* in which the plaintiff came to rest in an excavation located within ten feet of the roadway, after traveling approximately 250 feet from the point where the driver fell asleep at the wheel. 898 S.W.2d at 810; *see also Bergen v. Tex.-New Mexico Power Co.,* 130 S.W.3d 379, 381 (Tex.App.-Houston [14th Dist.] 2004, no pet.) (holding that vehicle in the ordinary course of travel does not suffer a blow-out, veer sharply to the right, jump the curb, and strike a nearby utility pole). Under the facts of this case, the court of appeals' characterization of the deviation as a normal incident of travel conflicts with our holding in *De La Garza* and several of the cases cited therein. *See* 898 S.W.2d at 811–12 (citing *Swope v. N. Ill. Gas Co.,* 251 Ill.App.3d 850, 191 Ill.Dec. 251, 623 N.E.2d 841 (1993), *Kavanaugh v. Midwest Club Inc.,* 164 Ill.App.3d 213, 115 Ill.Dec. 245, 517 N.E.2d 656 (1987), *Fla. Power & Light*

4. The precise location of the excavation is unclear. The investigating trooper—a witness for the plaintiffs—testified that 24.6 feet separated the edge of the roadway and the beginning of the excavation. The plaintiffs' expert witness, however, testified that hole was about 21 feet from the edge of the roadway. Both witnesses agreed that two and a half cars could be parked in the distance between the road and hole.

*Co. v. Macias,* 507 So.2d.1113 (Fla.Dist.Ct. App.1987), and *Scott v. Chevron U.S.A.,* 5 Cal.App.4th 510, 6 Cal.Rptr.2d 810 (1992)); *see also DiBenedetto v. Flora Township,* 153 Ill.2d 66, 178 Ill.Dec. 777, 605 N.E.2d 571, 573 (1992).

As in *De La Garza,* we do not reach whether Morin and Bautista's deviation was foreseeable because, foreseeable or not, no duty was owed by Military Highway under the circumstances of this case. *See* 898 S.W.2d at 812. Because the court of appeals' opinion conflicts with our holding in *De La Garza* regarding the creation of a duty under section 368 of the Restatement (Second) of Torts, without hearing oral argument, we grant the petition for review, reverse the court of appeals' judgment, and render judgment that the respondents take nothing. Tex.R.App. P. 59.1.

Justice GREEN did not participate in the decision.