IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF 
TEXAS
 
════════════
No. 
03-0949
════════════
 
Military 
Highway Water Supply Corp., Petitioner
 
v.
 
Francisca 
Morin, et al., Respondents
 
════════════════════════════════════════════════════
On Petition for Review from 
the
Court of Appeals for the 
Thirteenth District of Texas
════════════════════════════════════════════════════
 
PER 
CURIAM
 
JUSTICE GREEN did not participate in the 
decision.
 
A 
possessor of land who allows an excavation to remain on the land owes a duty to 
persons who encounter the excavation after (1) traveling with reasonable care on 
the highway and (2) foreseeably deviating from the highway in the 
ordinary course of travel.  Restatement (Second) of Torts § 368 
(1965).  In City of McAllen v. De 
La Garza, 898 S.W.2d 809, 811 (Tex. 1995), we concluded that a traveler who 
deviates from the highway is not “in the ordinary course of travel” unless the 
deviation is a normal incident of travel.  
The deviation in that case B 
in which the car traveled approximately 250 feet from the lane of travel before 
coming to rest in the City’s caliche pit located within ten feet of the roadway 
B 
was not in the ordinary course of travel.  
Id. at 812.  In this 
case, the court of appeals relied on De La Garza to conclude that the 
deviation occurred in the ordinary course of travel.  114 S.W.3d 728, 734-36.  We conclude, however, that the court’s 
opinion conflicts with our holding in De La Garza[1] 
and that Military Highway owed no duty to the respondents.  We accordingly reverse the court of 
appeals’ judgment and render judgment that the respondents take nothing.   
This 
is a wrongful-death and survivorship action stemming from an automobile accident 
that occurred on and adjacent to farm-to-market road 732 (“FM 732") in Cameron 
County.  FM 732 is a two-lane road 
with a posted speed limit of fifty-five miles per hour.  Because Cameron County has no local 
stock laws in place, livestock can roam freely near the vehicular traffic along 
FM 732.  See Tex. Const. art. XVI, § 23 (delegating to 
Legislature the power to pass laws regulating livestock); Tex. Agric. Code §§ 143.024 (permitting 
elections to adopt local stock laws), 143.101 (excluding numbered farm-to-market 
roads from definition of “highway”), 143.102 (prohibiting owners or caretakers 
from knowingly allowing animals to traverse or roam at large on right-of-way of 
“highway”); see also Gibbs v. Jackson, 990 S.W.2d 745, 747-50 (Tex. 1999) 
(discussing duties regarding restraint of livestock).
On 
June 3, 1996, 
Military Highway Water Supply Corporation (“Military Highway”), a non-profit 
public utility, dug a hole to install a water meter on its utility easement.[2]  The hole was approximately three feet in 
diameter and was located more than twenty feet from the edge of FM 732.  Military Highway’s manager testified 
that, because the Texas Department of Transportation also had an easement over 
the area, Military Highway was required to comply with the Department’s 
regulations.  Those regulations and 
Military Highway’s corresponding policies required Military Highway to fill the 
excavation after completing the installation.  Military Highway, however, did not fill 
in the hole.  In July of 1996, a 
neighboring landowner notified Military Highway that the excavation had not been 
filled, but the public utility took no further action.
On 
the morning of August 1, 
1996, Mercedes Melendez Morin (“Morin”) was driving his car 
northbound approximately fifty to fifty-five miles per hour down FM 732.  Ausencio Bautista Ramos (“Bautista”) was 
a passenger in the front seat, and two other passengers were seated in the 
back.  A horse crossed the road, and 
the vehicle struck the horse.  One 
of the back-seat passengers saw the horse before the impact and had time to duck 
behind the front seat prior to the collision.  Military Highway’s expert testified 
that, under the circumstances, Morin had about two and a half seconds to react 
to the horse; however, it is undisputed that Morin never applied the brakes and 
did not swerve to avoid the animal.  
After striking the horse, the vehicle veered to the left and entered the 
southbound lane.  It then left the 
pavement and traveled through an unimproved shoulder on the opposite side of the 
highway.  The car ultimately reached 
Military Highway’s open excavation after traveling approximately 535 feet from 
the point of impact with the horse.  
There, the car’s right-front wheel climbed a mound of dirt piled next to 
the hole, and the left-front wheel fell into the hole.  The car then rolled to the left, 
flipped, and landed upside down against a tree 633.6 feet from the point of the 
initial impact with the horse.  
Morin and Bautista died as a result of the accident; the two back-seat 
passengers survived. 
Several 
family members and the estates of Morin and Bautista sued Military Highway for 
negligence.  After a trial on the 
merits, the jury found that Military Highway and Morin were respectively 52% and 
48% responsible and awarded damages to the Morin and Bautista plaintiffs.  The trial court entered judgment on the 
verdict.  Military Highway appealed, 
asserting that it owed no duty to Morin and Bautista as a matter of law, and 
that there was legally insufficient evidence that the accident was a foreseeable 
result of Military Highway’s failure to fill the excavation.  114 S.W.3d at 732.  The court of appeals held that Military 
Highway owed a duty to Morin and Bautista under the facts of this case, and that 
there was legally sufficient evidence to support the foreseeability 
finding.  Id. at 736, 
738-39.  Military Highway petitioned 
this Court for review.  
As 
we stated in City of McAllen v. De La Garza, 898 S.W.2d 809, 810 (Tex. 
1995), “[t]he existence of a legal duty is a question of law for the court to 
decide from the facts surrounding the occurrence in question.”  In that case, the City owned a caliche 
pit that was approximately thirty feet deep and, in some places, within ten feet 
of the adjoining roadway.  
Id.  After a driver 
with a blood alcohol content of .11 blacked out or fell asleep, his car traveled 
approximately 250 feet (across the lane with oncoming traffic, through a wire 
fence, and over a dirt embankment) before becoming airborne, colliding with a 
small tree, and coming to rest upside down at the bottom of the caliche 
pit.  Id.  De La Garza, a passenger who had a blood 
alcohol content of .10 and was not wearing a seatbelt, was thrown from the car 
and killed.  Id.  De La Garza’s family sued the City for 
wrongful death, arguing that the City was negligent by failing to warn travelers 
of the dangerous condition and in failing to make that condition safe.  Id.  
In 
De La Garza, this Court applied section 368 of the Restatement (First and 
Second) of Torts to hold that the City did not owe a duty to De La Garza as a 
matter of law, because he was not traveling with reasonable care upon the 
highway and his deviation was not in the ordinary course of travel.  Id. at 812 (finding section 368 
determinative); see also Gorrell v. Tex. Utilities Elec. Co., 915 S.W.2d 
55, 59-60 (Tex. App.BFort 
Worth 1995, pet. denied) (relying on De La Garza, 898 S.W.2d at 
811-12).  We did not reach the issue 
of whether the deviation was foreseeable because we held that, “‘foreseeable’ or 
not, no duty was owed by the City under the circumstances of the case.”  898 S.W.2d at 812. 
Section 
368 of the Restatement (Second) of Torts defines the circumstances under which a 
duty is owed to individuals who are injured after deviating from an adjoining 
roadway onto the land.  That section 
provides:
 
A 
possessor of land who creates or permits to remain thereon an excavation or 
other artificial condition so near an existing highway that he realizes or 
should realize that it involves an unreasonable risk to others accidentally 
brought into contact with such condition while traveling with reasonable care 
upon the highway, is subject to liability for physical harm thereby caused to 
persons who
 
  (a) are traveling on the highway, or
 
  (b) foreseeably deviate from it in the 
ordinary course of travel.
 
Restatement (Second) of Torts § 368.[3]  In De La Garza, we stressed that 
this section speaks to a duty only to those persons “who were traveling with 
reasonable care upon the highway and who foreseeably deviated from it 
in the ordinary course of travel.”  
898 S.W.2d at 811 (emphasis in original).  In this case, the jury found that 
Morin’s negligence proximately caused his death and that he was 48% responsible 
for the occurrence.  Neither Morin 
nor Bautista challenged those findings on appeal.  The court of appeals nonetheless 
determined that Morin had “no fault” and that he was propelled across the field 
“unerringly.”  114 S.W.3d at 735, 
738.  Even assuming, contrary to the 
verdict, that Morin was traveling with reasonable care on FM 732, Military 
Highway owed him and Bautista a duty only if his deviation from the road 
occurred “in the ordinary course of travel.”  De La Garza, 898 S.W.2d at 
811.  The court of appeals concluded 
that it did.  We disagree.
Under 
section 368, “a traveler is not ‘in the ordinary course of travel’ unless the 
deviation from the road is a normal incident of travel.”  Id.; see also Restatement (Second) of Torts § 368 
cmt. g.  Thus, the section does not 
impose a duty to travelers whose “deviation is one not reasonably to be 
anticipated . . . or is for a purpose not normally connected with travel.”  Restatement (Second) of Torts § 368 
cmt. g, quoted in De La Garza, 898 S.W.2d at 811; see also id. 
cmt. e (section applies to those who “reasonably and expectably deviate from the 
highway”).  In determining whether a 
deviation is reasonably to be expected in the ordinary course of travel, the 
distance between the highway and condition is “frequently decisive, since those 
who deviate in any normal manner in the ordinary course of travel cannot 
reasonably be expected to stray very far.”  
Id. cmt. h, cited with approval in Jacque v. Pub. Serv. 
Co., 890 P.2d 138, 139 (Colo. Ct. App. 1994), and Zakoff v. Chi. Transit 
Auth., 782 N.E.2d 873, 879-81 (Ill. App. Ct. 2002); see also id. cmt. 
g, illus. 1-5.  Distance, however, 
should generally be considered in conjunction with other factors, such as the 
character and use of the highway and the nature and accessibility of the 
condition itself.  Id. cmt. 
h.    
The 
question here is whether Morin and Bautista’s deviation from FM 732, triggered 
by hitting a horse while traveling fifty to fifty-five miles per hour, was a 
normal incident of travel B 
an occurrence that Military 
Highway could have reasonably anticipated.  The excavation left by 
Military Highway was more 
than twenty feet from the edge of the southbound lane of FM 732.[4]  Before reaching the excavation, Morin 
and Bautista traveled over 500 feet from the point of impact with the horse, 
careening from the northbound lane to the southbound lane, across a sixteen-foot 
unimproved shoulder, and onto the abutting land.  This is a greater deviation from normal 
travel than the deviation in De La Garza, in which the plaintiff came to 
rest in an excavation located within ten feet of the roadway, after traveling 
approximately 250 feet from the point where the driver fell asleep at the 
wheel.  898 S.W.2d at 810; see 
also Bergen v. Tex.-N.M. Power Co., 130 S.W.3d 379, 381 (Tex. App.BHouston 
[14th Dist.] 2004, no pet.) (holding that vehicle in the ordinary course of 
travel does not suffer a blow-out, veer sharply to the right, jump the curb, and 
strike a nearby utility pole).  
Under the facts of this case, the court of appeals’ characterization of 
the deviation as a normal incident of travel conflicts with our holding in De 
La Garza and several of the cases cited therein.  See 898 S.W.2d at 811-12 (citing 
Swope v. N. Ill. Gas Co., 623 N.E.2d 841 (Ill. App. Ct. 1993), 
Kavanaugh v. Midwest Club Inc., 517 N.E.2d 656 (Ill. App. Ct. 1987), 
Fla. Power & Light Co. v. Macias, 507 So.2d 1113 (Fla. Dist. Ct. App. 
1987), and Scott v. Chevron U.S.A., 6 Cal. Rptr. 2d 810 (Cal. Ct. App. 
1992)); see also DiBenedetto v. Flora Township, 605 N.E.2d 571, 573 (Ill. 
1992).  
As 
in De La Garza, we do not reach whether Morin and Bautista’s deviation 
was foreseeable because, foreseeable or not, no duty was owed by 
Military Highway under the 
circumstances of this case.  See 
898 S.W.2d at 812.  Because the 
court of appeals’ opinion conflicts with our holding in De La Garza 
regarding the creation of a duty under section 368 of the Restatement (Second) 
of Torts, without hearing oral argument, we grant the petition for review, 
reverse the court of appeals’ judgment, and render judgment that the respondents 
take nothing.  
Tex. R. App. P. 59.1.
 
OPINION 
DELIVERED: January 21, 
2005




[1] See 
Tex. 
Gov’t Code § 22.001(a)(2).

[2] The easement gave Military Highway the “right to operate, inspect, repair, maintain, 
replace, and remove utility pipelines.” 

[3] Although section 368 refers specifically to 
“possessor[s] of land,” we conclude that the section should apply with equal 
force to easement holders, such as Military Highway
, that are responsible for filling the excavation in 
question. 

[4] The precise location of the excavation is unclear.  The investigating trooper B a witness for the plaintiffs B testified that 24.6 feet separated the edge of the 
roadway and the beginning of the excavation.  The plaintiffs’ expert witness, however, 
testified that hole was about 21 feet from the edge of the roadway.  Both witnesses agreed that two and a 
half cars could be parked in the distance between the road and 
hole.